**In the Matter of the Arbitration Between GARFIELD & CO., Petitioner-Appellant,**

**and**

**Francis J. WIEST, Respondent-Appellee.**

No. 22, Docket 34552.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1970.

Decided Oct. 20, 1970.

C. Dickerman Williams, Leslie Kirsch, Baker, Nelson, Williams & Mitchell, New York City, for appellant.

Mortimer Goodman, Grandefeld & Goodman, New York City, for appellee.

Andrew J. Connick, Milbank, Tweed, Hadley & McCloy, New York City, for amicus curiae New York Stock Exchange.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

These are appeals from (1) an order of the United States District Court for the Southern District of New York denying the petition of Garfield & Co. (Garfield) to vacate an arbitration award made against it, and (2) a judgment by the same court in favor of the cross-petitioner, Francis J. Wiest, and against cross-respondent Garfield for $73,447.95. The judgment and order were made on an opinion by McGohey, J., reported in 308 F.Supp. 1107 (1970).

Petitioner-appellant Garfield is a member firm of the New York Stock Exchange (Exchange). It is a small firm with three general partners and one limited partner. Respondent-appellee had formerly been a partner in Garfield & Co. but resigned and joined another member of the Exchange, the firm of Spear, Leeds & Kellogg. The latter is a large firm and was a specialist in 61 stocks, some of which were quite active-

ly traded, before Wiest joined the firm. Mr. Kellogg, the leading partner of the firm, is a former Chairman of the Board of Governors of the Exchange.

The present dispute arose out of the above-mentioned change of firms by Wiest. Seeking his share of the proceeds of the transfer of an Exchange membership and certain salary and other amounts due him under the terms of the Garfield & Co. partnership agreement, Wiest sent the Arbitration Director of the Exchange a claim against Garfield for $75,719, exclusive of interest and costs. Garfield denied most of this liability and counterclaimed for $250,000 damages for the business expectancy in certain listed stocks in which Wiest had become the Exchange specialist by the use of funds allegedly provided by Garfield. The theory of the counterclaim was that there had been a conspiracy entered into between Wiest and Mr. Kellogg while Wiest was a partner in Garfield by which Wiest would leave Garfield and join Spear, Leeds & Kellogg, taking with him the status of specialist in eight stocks.

Under the Exchange Constitution and Rules and the Garfield partnership agreement there were clearly defined arbitration procedures. The Garfield partnership agreement provided in part:[7]

Any controversy or claim arising out of, or relating to, this agreement * * * shall be settled in New York City by arbitration in accordance with the Constitution and Rules then obtaining of the New York Stock Exchange * * *.

Article VIII, Section 5, of the Exchange Constitution provides:

Any controversy between parties who are members, allied members, member firms or member corporations shall be submitted for arbitration to five Arbitrators, members of the Board of Arbitration provided for by Section 4 of this Article, and the decision of a majority of such Arbitrators shall be final. All such proceedings shall be held in the City of New York.

Article VIII, Section 4, provides in pertinent part:

Promptly after the annual election of the Exchange, the Chairman of the Board of Governors shall appoint, subject to the approval of the Board of Governors, a Board of Arbitration to be composed of fifteen arbitrators selected from members and allied members of the Exchange who are not members of the Board of Governors, to serve at the pleasure of the Board of Governors or until the next annual election of the Exchange and their successors are appointed and take office.

The Arbitration Director selects five members of this Board as a panel for any particular arbitration. Article VIII, Section 7, provides in part:

The Arbitrators in any case may at any time during the proceedings, * * * dismiss the proceedings and refer the parties to their remedies at law * * *.

The Arbitration Procedures Pamphlet, distributed to the parties, states:

Upon receipt of the notice [giving the names and addresses of the arbitrators and the date, time and place of the hearing], a party may challenge any arbitrator for cause by written notice to the Arbitration Director. If the challenge is sustained by the Arbitration Director, another arbitrator will be chosen as a replacement.

The Procedures Pamphlet specifically states that "[i]t neither interprets the relevant portions of the Constitution and Rules nor is a substitute therefor."

As noted above, Wiest initiated the arbitration proceeding by filing a statement of claim with the Arbitration Director. Garfield filed an answer including the counterclaim, and the parties signed a submission agreement for an arbitration to be conducted in accordance with the Exchange Constitution and Rules. After the parties had submitted statements of their respective claims to the Arbitration Director, he sent them the notice (mentioned in the

Procedures Pamphlet above) setting the hearing for March 7, 1968 and enclosed a copy of the Procedures Pamphlet. Garfield received this notice during the last week of February 1968. At no time did Garfield challenge any of the arbitrators for cause under the above quoted passage of the Procedures Pamphlet. Instead, at the opening of the arbitration hearing Garfield made a motion to have the arbitrators dismiss the proceedings and remit the parties to their remedies at law under the provisions of Article VIII, Section 7, of the Exchange Constitution. The primary ground for this motion was that the arbitrators might be embarrassed in deciding a case in which the firm of Spear, Leeds & Kellogg (Mr. Kellogg in particular), a firm with which the arbirators presumably did substantial business, would be severely criticized by a relatively small and unknown firm. After assurances by the chairman of the panel about lack of bias, the motion was denied and the hearings began. The hearings continued through November 20, 1968 and, on December 19, 1968, the arbitrators made an award in Wiest's favor.

On November 18, 1968, while this case was being presented to the arbitrators, the Supreme Court handed down its decision in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), that an arbitration award must be vacated under § 10 of the Arbitration Act, 9 U.S.C. § 10,[1] where a "neutral" arbitrator had failed to disclose substantial dealings with one of the parties. In January 1969 Garfield, relying upon the holding of Commonwealth Coatings, filed a petition in the district court below to vacate the award. In August 1969 Wiest filed a petition in the Supreme Court, New York County, to confirm the award in his favor. Garfield removed

Wiest's state court petition to the district court, and Wiest sought a remand back to the state court or, alternatively, a confirmation of the award by the district court. In January 1970 the order and judgment mentioned at the beginning of this opinion were entered, and Garfield filed this appeal.

Garfield contends that Commonwealth Coatings is fully applicable to Exchange arbitration; that it timely raised at the commencement of the arbitration hearings its objection to continuing before the arbitration panel; and that the award should be vacated because the arbitrators did not disclose their almost certain dealings with Spear, Leeds & Kellogg, and with Mr. Kellogg. While we do not fully disagree with all of appellant's contentions, we affirm on the ground that, in the context of Exchange arbitration, the particular type of transactions to which Garfield objects need not be disclosed.

In Commonwealth Coatings the parties, under the contract giving rise to the dispute therein, had agreed to submit any controversies to arbitration. Pursuant to this agreement each party appointed an arbitrator, and these two together selected a third, supposedly neutral, arbitrator. Unknown to the petitioner in that case, the third arbitrator, in his business as an engineering consultant, had done significant and repeated business with the other party. This relationship between the arbitrator and the other party was not discovered by the petitioner until after an award was made. The aggrieved party sought vacation of the award in federal court under § 10 of the Arbitration Act, and relief was denied by both the district court and the court of appeals. The Supreme Court reversed despite the fact that the arbitration award had been

1. 9 U.S.C. § 10 provides in pertinent part:
   In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.
(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

unanimous and no claim had been made at any time that there had been any actual partiality, unfairness, bias, or fraud. 393 U.S. at 152, 89 S.Ct. 337, 21 L.Ed.2d 301 (dissenting opinion of Fortas, J.), and see lower court opinion, 382 F.2d 1010, 1012 (1 Cir. 1967).

■ Initially we must consider whether Garfield's objections to the arbitration panel were properly and timely raised. It is well settled that disgruntled losers cannot first raise their objections after an award has been made. Ilios Shipping & Trading Corp. v. American Anthracite Corp., 148 F.Supp. 698 (SD NY 1957), aff'd, 245 F.2d 873 (2 Cir. 1957); San Carlo Opera Co. v. Conley, 72 F.Supp. 825, 833 (SDNY 1946), aff'd, 163 F.2d 310 (2 Cir. 1947). Here Garfield did not challenge any of the arbitrators for cause as provided in the Arbitration Procedures Pamphlet but instead made a motion under Article VIII, Section 7, of the Exchange Constitution for the arbitrators to remit the parties to their legal remedies. Garfield urges that the provision for challenges for cause in the Procedures Pamphlet was nugatory in that such challenges were not provided for in the Exchange Constitution and Rules. Without passing on this contention we do accept Garfield's second argument that, under the then existing law, business dealings with the parties were not deemed cause for challenge. Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 153, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (dissenting opinion of Fortas, J.); Commonwealth Coatings Corp. v. Continental Casualty Co., 382 F.2d 1010 (1 Cir. 1967); Ilios Shipping & Trading Corp. v. American Anthracite Corp., *supra*, at 700; Stiers Bros. Const. Co. v. Broderick, 60 F.Supp. 792, 799 (D.Kan. 1945); Astoria Medical Group v. Health Insurance Plan, 11 N.Y.2d 128, 136, 139, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962), and hence that Garfield should not be faulted for failure to make a challenge for cause. Contrary to the opinion below, we find that Garfield's motion at the beginning of the arbitration hearing properly and timely raised its objections under the circumstances and the then existing state of the law. Needless to say, a more specific objection would be required after the *Commonwealth Coatings* decision, but on these facts Garfield cannot be held to a precise prediction of future case law.

■■ Returning to the merits, *Commonwealth Coatings* teaches that when parties agree to arbitration, the arbitrators, in order to avoid even the appearance of bias, must disclose any nontrivial dealings with one party which are not known to the other party. A necessary corollary is that, once disclosure has been made, the arbitrator may be challenged for cause if the dealings are nontrivial. The obverse of this last proposition is that when such challenges are waived in advance by the parties as to certain transactions, arbitrators are not required to disclose participation in such transactions.

■ In the present case Garfield urges that since the arbitrators did not reveal the exact extent of their dealings with Spear, Leeds & Kellogg in those stocks in which the latter were specialists and did not reveal dealings with Mr. Kellogg as a former Chairman of the Board of Governors, there was no proper disclosure. We disagree for we find that such objections were waived in advance by Garfield and by all other members of the Exchange.

Garfield, when becoming a member firm of the Exchange, agreed to the arbitration of disputes according to the Exchange Constitution and Rules. The selection of the arbitration panels was known to it, and it most certainly knew that any arbitrators, by their very connection with the Exchange, would, in the ordinary course of business, have dealings with specialists, and that Exchange arbitrators would usually have more substantial contacts with large member firms than with small member firms. While we find rather unrealistic the Exchange's contention in its *amicus* brief that there is no possibility of fa-

voritism by specialists, it would appear that any objections to arbitrators based upon their dealings through specialists are waived by member firms when they agree to Exchange arbitration; such dealings are contemplated by the parties when they join the Exchange. In *Commonwealth Coatings* the parties agreed to the selection of a neutral third arbitrator, one without any nontrivial connections with either party; in the present case Garfield agreed to arbitration before a panel of arbitrators who almost necessarily would have had dealings in the ordinary course of Exchange business with any potential opposing party who is also a member of the Exchange.

Similarly, when becoming an Exchange member, Garfield knew that if it should ever become involved in a dispute that concerned a former Chairman of the Board of Governors, it would be probable that the arbitrators might have had some dealings with the former Chairman. Although Garfield points to the provision in Article VIII, Section 7, authorizing the arbitrators to remit the parties to their legal remedies, Garfield is not objecting so much to the qualifications of the arbitrators as to their likely business connections with its opponent. While we do not pretend to interpret Article VIII, Section 7, we do think that the provision must have been intended to give an alternative remedy, not because of the connections of a party, but because of the possible legal difficulties in the issues of a particular case or because of individual disqualifications of the arbitrators, neither of which appear to be present in this case. Otherwise, disputes involving certain of the larger, or more active, or more specialized, firms would be routinely remitted to the courts.

Inasmuch as Garfield has made no claim that there were dealings between the arbitrators and Spear, Leeds & Kellogg or Mr. Kellogg other than in the ordinary course of Exchange business, *Commonwealth Coatings* does not require the vacation of the award in this case. However, we wish to emphasize that we do not hold that Exchange arbitration is exempt from the holding in *Commonwealth Coatings* insofar as an arbitrator is required to disclose any dealings he may have had with a party, which were dealings *not* in the ordinary course of Exchange business. Under § 28(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(b), the arbitration procedures of the Exchange are subject to existing law, which of course includes the provisions of the Arbitration Act and, in particular, § 10 of that Act as interpreted by the Supreme Court. In this opinion we are only holding that, when parties have agreed to arbitration with full awareness that there will have been certain, almost necessary, dealings between a potential arbitrator and one of the opposing parties, disclosure of these dealings is not required by *Commonwealth Coatings* inasmuch as the parties are deemed to have waived any objections based on these dealings.

The order and judgment of the district court are affirmed.