**In the Matter of an Arbitration between COOK INDUSTRIES, INC., as assignee of Rag. Luigi Gandini Voghera, Petitioner-Appellant,**

**and**

**C. ITOH & CO. (AMERICA) INC., Respondent-Appellee.**

**No. 828, Docket 35790.**

United States Court of Appeals,
Second Circuit.

Argued June 7, 1971.

Decided Sept. 16, 1971.

---

Francis J. O'Brien, New York City (Zock, Petrie, Sheneman & Reid, New York City, on the brief), for petitioner-appellant.

David A. Botwinik, New York City (Pavia & Harcourt, New York City, on the brief), for respondent-appellee.

Before FRIENDLY, Chief Judge, and HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York which denied appellant's motion, made under 9 U.S.C. § 10(b) (1964), to vacate an arbitration award because of the alleged partiality of one of the arbitrators. We affirm.

■ Appellant is the assignee of Rag. Luigi Gandini Voghera, an Italian firm, which contracted to sell corn to the appellee. A dispute arose with respect to the performance of the contract, and appellant obtained an order of the district court directing the appellee to proceed to arbitration, as provided for in the sales contract, before the arbitration committee of the New York Produce Exchange. Although that committee normally consists of five persons, one was absent and the arbitration proceeded before the remaining four. One of the four arbitrators was Robert R. Anderson, an employee of Cargill Incorporated, the largest United States company in the grain trade. After the arbitrators had ruled unanimously in appellee's favor, appellant brought this action urging that there was "evident partiality" within the meaning of 9 U.S.C. § 10(b) (1964) and Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), because Anderson's employer, Cargill, had substantial business dealings with appellee, a circumstance which Anderson failed to disclose. We agree with the district court that appellant's position is without merit.

The record in the present case shows that Cargill, and both appellant and appellee, are corn dealers in an industry made up of comparatively few companies. Appellant as well as appellee has done business with Cargill. Many of appellant's employees are former employees of Cargill and knew of its dealings with the appellee. The district court was justified in concluding that appellant was fully aware at the time of the submission to arbitration of the relationship between appellee and Cargill.

Appellant cannot remain silent, raising no objection during the course of

the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.

"Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection. See San Carlo Opera Co. v. Conley, D.C.S.D.N.Y. 1946, 72 F.Supp. 825, 833, affirmed 2 Cir., 1947, 163 F.2d 310."

Ilios Shipping & Trading Corp. S. A. v. American Anthracite & Bituminous Coal Corp., 148 F.Supp. 698, 700 (S.D.N.Y.), aff'd per curiam, 245 F.2d 873 (2d Cir. 1957); see also Garfield & Co. v. Wiest, 432 F.2d 849 (2d Cir. 1970), cert. denied, 401 U.S. 940, 91 S.Ct. 939, 28 L. Ed.2d 220 (1971).

*Commonwealth Coatings, supra,* is readily distinguishable. In that case "the facts concerning the close business connections between the third arbitrator and the prime contractor were unknown to petitioner and were never revealed to it by [the] arbitrator, by the prime contractor, or by anyone else until after an award had been made." 393 U.S. at 146, 89 S.Ct. at 338.

■ Moreover, while the Supreme Court in *Commonwealth Coatings* emphasized the importance of an arbitrator disclosing "to the parties any dealings that might create an impression of possible bias," 393 U.S. at 149, 89 S.Ct. at 339, this court, in giving practical meaning to that principle, has treated the obligation to which arbitrators are subject as being to disclose dealings of which the parties cannot reasonably be expected to be aware, i. e., dealings "not in the ordinary course of * * * business," Garfield & Co. v. Wiest, *supra,* 432 F.2d at 854. In an attempt to bring itself within the scope of that language appellant alleges in its brief that "there were important and current transactions pending apart from the ordinary business conducted between [Cargill] and

[appellee]." We find nothing in the record which suggests the existence of any extraordinary secret deal between appellee and Anderson's employer. Appellant had the burden of showing any such extraordinary dealings and failed to do so. We see no reason for affording it a second chance.

The order of the district court is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent with deference and not without reluctance. Appellant Cook moved to vacate an arbitration award to appellee Itoh. The case was decided below on the basis of conflicting and ambiguous affidavits, with no evidence taken.

Section 8 of the Grain Arbitration Rules of the New York Produce Exchange required that

No person shall serve as an arbitrator in any arbitration if he has any financial or personal interest in the result of the arbitration, unless the parties waive such disqualification in writing.

No such waiver was signed here. The only grain member of the Arbitration Committee of that Exchange was an employee of Cargill Incorporated. Cargill's group of foreign companies known as the "Tradax Companies" sold approximately $50,000,000 of soya beans and feed grains in 1969 to appellee Itoh, a major Japanese grain importer. It now appears that Itoh is Cargill's most important grain customer in Japan. The arbitrator personally handles, according to appellant's affidavits, 95 per cent of his company's sales to Japan. Those affidavits aver that his performance is judged by Cargill on the basis of those sales. The arbitrator's own affidavit in opposition to the motion states that

I have no connection with, and no interest in the operations of any company or subsidiary related to Cargill Inc. While the Tradax Companies may have done business with Itoh of Japan, such business is outside the sphere of my responsibilities.

At the very least, it seems to me, this raises an issue of fact which should be resolved by the taking of testimony, cross examination and findings below.

Beyond this, if we were to take the averments of the affidavits in the light most favorable to the appellant, the arbitrator, although he was but one of a committee of four, would appear to have had a "personal" interest under § 8 of the Grain Arbitration Rules, which required his disqualification in the absence, as here, of a written waiver. This is essentially the same rule—that an award should be set aside for an arbitrator's undisclosed pecuniary interest —that the Supreme Court read into the Federal Act, 9 U.S.C. §§ 1–14, in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), while pointing out that courts

> should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. 393 U.S. at 149, 89 S.Ct. at 339.

The majority and appellee rely upon Garfield & Co. v. Wiest, 432 F.2d 849 (2d Cir. 1970), where the court held there was a waiver in advance by all member firms of the New York Stock Exchange of objections to arbitrators based on their dealings through specialists, at least as regards dealings in the ordinary course of Exchange business. 432 F.2d at 853–854. From this, the majority says, it follows that, since here Cook was aware that Cargill did business with Itoh and that the arbitrator in question was employed by Cargill, Cook must be deemed to have waived any disqualification. See also Ilios Shipping & Trading Corp., S. A. v. American Anthracite & Bituminous Coal Corp., 148 F.Supp. 698, 700 (S.D.N.Y.), aff'd per curiam, 245 F.2d 873 (2d Cir. 1957).

This view does not, I suggest, do justice to § 8 of the Grain Arbitration Rules, the U. S. Arbitration Act (9 U.S. C. § 10) authorizing the court to vacate an award where there is "evident partiality" on the arbitrator's part, the decision in Commonwealth Coatings, supra, or the parties in this case.

How are the parties to know in advance whether to waive unless there is full disclosure? How are they to know whether there are transactions "out of the ordinary course of business" unless pending transactions are disclosed? Even at this stage of the proceedings no one has any precise knowledge what matters were pending between Cargill/Tradax and Itoh and at the time of the arbitration. Commodity transactions, the affidavits tell us, generally are secret. "If arbitrators err on the side of disclosure, as they should," according to Mr. Justice White,[1] the salutary rule espoused by the majority may then be invoked against a party seeking the courts' aid to set aside an award.

But here, even though the arbitrator filed an affidavit with the court in support of the award, the affidavit falls far short of disclosing just what is his relation with Itoh. He says, "While the Tradax Companies may have done business with Itoh of Japan, such business is outside the sphere of my responsibilities." Here surely is an unresolved question of fact. I see no reason for the courts to write arbitrators a blank check, so to speak, of nondisclosure.

I would reverse and remand with instructions to the trial court to make findings as to the extent of the relationship between the arbitrator and Itoh and whether that relationship involved, at the time of the arbitration, dealings that were undisclosed and so substantial or so "out of the ordinary course of business" as to have required, in fairness to the parties, disclosure or disqualification. While the burden of proof should

---

1. Joined by Marshall, J., concurring in Commonwealth Coatings Corp. v. Conti-   nental Casualty Co., 393 U.S. 145, 150–152, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

rest on the party making the claim of partiality, Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F. 2d 577, 582 (2d Cir. 1967), the court is under an obligation to scan the record, to ascertain the facts, see Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17 (2d Cir. 1962), which are here wholly in the air.

In short, I would not turn the doctrine of waiver restated in *Garfield, supra,* into a *carte blanche* for the nondisclosure decried in *Commonwealth Coatings, supra.*