34 N.Y.2d 123 (1974)
In the Matter of the Arbitration between J. P. Stevens & Co., Inc., Appellant, and Rytex Corporation, Respondent.
Court of Appeals of the State of New York.
Argued January 10, 1974.
Decided May 2, 1974.
Melvin Beinart and J. J. L. Hessen for appellant.
Milton S. Teicher for respondent.
Chief Judge BREITEL and Judges JASEN and GABRIELLI concur with Judge RABIN; Judge WACHTLER dissents and votes to reverse in a separate opinion in which Judge JONES concurs; Judge STEVENS taking no part.
*125 RABIN, J.
This case once again raises the difficult question whether the failure of an arbitrator to disclose fully his relationship with one of the parties to the proceeding is grounds to vacate the arbitration award. Respondent Rytex Corporation (Rytex) seeks to vacate an arbitration award rendered in favor of appellant J. P. Stevens & Co., Inc. (Stevens) on the grounds of bias of two of the arbitrators, who failed to disclose in advance of the hearing the extent of their business relationship with Stevens. The Appellate Division, one Justice dissenting, held that the relationship was substantial enough to require vacating the arbitration award. We agree and hold that the failure of an arbitrator to disclose facts which reasonably may support an inference of bias is grounds to vacate the award under CPLR 7511.
The parties entered into an agreement in 1966 under which Rytex was to perform certain services for Stevens. The agreement *126 provided for arbitration, in accordance with the rules of the American Arbitration Association (AAA), of all contract disputes. Subsequently, when a controversy arose between the parties, Rytex initiated the arbitration proceeding which is the subject of this case. The parties were supplied by the AAA with a list of possible arbitrators, but were able to mutually agree upon only one, James T. Burnish (Burnish). In order to complete the three-arbitrator panel contemplated by the agreement, the AAA, in accordance with its rules, made an administrative appointment of Philip J. Kaplan (Kaplan) and Gerard Jerry Lincer (Lincer). Prior to agreeing upon Burnish, the parties had been advised by the AAA that he was employed by Deering Milliken, Inc. (Deering). In the letter notifying the parties of the appointments of Kaplan and Lincer, the AAA advised that Lincer was employed by Kenyon Piece Dyeworks (Kenyon). The letter concluded "if either party has any factual objections to the above appointments, it is requested that said objections be filed in writing with the undersigned on or before January 6, 1972." Rytex did not object to the selection of Burnish or Lincer until after the award was rendered, several months subsequent to the January 6 deadline for objecting to the Lincer or Kaplan appointments. No contention is made that Kaplan, the third arbitrator, was biased.
The arbitration hearing was held April 6, 1972 and an award in favor of Stevens, signed by all three arbitrators, was issued on May 6, 1972. It was only after receipt of the adverse award that Rytex claimed that the arbitrators were not impartial.
It is undisputed that both Deering and Kenyon, the respective employers of arbitrators Burnish and Lincer, had business dealings with Stevens, the successful party in the arbitration. However, Rytex's claim of bias rests upon the more specific allegation that such business relationships were substantial, a claim which the Appellate Division found adequately supported by the record. The affidavit of Stevens' vice-president reveals that the Deering and Kenyon firms between them did some $2.5 million in business with Stevens annually. Moreover, Lincer was the sales manager of Kenyon, and while no claim is made of any actual impropriety in his conduct as arbitrator stemming from this relationship, it could reasonably be inferred *127 that a person in his position might not have been acceptable as an arbitrator if the facts had been disclosed to Rytex.[*]
The Appellate Division characterized the business relationship in question as substantial. Our courts have held that the failure to disclose such a substantial relationship is grounds to vacate the award under CPLR 7511 and its predecessor (Civ. Prac. Act, § 1462). (Matter of Milliken Woolens [Weber Knit Sportswear], 9 N Y 2d 878, affg. 11 A D 2d 166; Matter of Shirley Silk Co. [American Silk Mills], 257 App. Div. 375; Matter of Knickerbocker Textile Corp. [Sheila-Lynn, Inc.], 172 Misc. 1015, affd. 259 App. Div. 992; cf. Matter of Cross Props. [Gimbel Bros.], 15 A D 2d 913, 914, affd. 12 N Y 2d 806.)
Our decision, however, involves broader considerations as to the proper role to be accorded the arbitration process in the resolution of disputes. This is not the first case to come to this court in which a party to a completed arbitration has sought to overturn the award because an arbitrator failed to make a thorough disclosure of his background. Both our decisions and those of lower courts in such cases demonstrate how difficult it is to draw the line between those undisclosed facts which do and do not support an inference of bias sufficient to vacate the award. (Compare, e.g., Matter of Milliken Woolens [Weber Knit Sportswear], supra; Matter of Shirley Silk Co. [American Silk Mills], supra; Matter of Knickerbocker Textile Corp. [Sheila-Lynn, Inc.], supra, with Matter of Cross Props. [Gimbel Bros.], [4-1] [affd. as a 6-1 decision], supra; Matter of Meinig Co. [Katakura & Co.], 241 App. Div. 406, affd. 266 N.Y. 418; Matter of Perl [General Fire & Cas. Co.], 34 A D 2d 748; Matter of Weinrott [Carp], 32 N Y 2d 190; Matter of Labor Relations Section of Northern N. Y. Bldrs. Exch. v. Gordon, 41 A D 2d 25; see, also, Matter of Baar & Beards [Oleg Cassini, Inc.], 37 A D 2d 106, revd. 30 N Y 2d 649; compare the cases arising under the Federal statute, Commonwealth Corp. v. Casualty Co., 393 U. S. 145; Matter of Sanko S. S. Co. [Cook Ind.], 495 F.2d 1260 [1973], with Garfield & Co. [Wiest], 432 F.2d 849 [1970], cert. den. 401 U. S. 940; *128 and Cook Ind. v. Itoh & Co. [Amer.], 449 F.2d 106, cert. den. 405 U. S. 921.) Because arbitration is at bottom a consensual arrangement, resolution of this delicate question of disqualification, which has proved so vexing to the courts, ought to be resolved in the first instance by the parties to the agreement. As Mr. Justice WHITE stated, concurring in Commonwealth Coatings (393 U. S., at p. 151), "The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are better informed of the prevailing ethical standards and reputations within their business." This can only be achieved if, prior to the commencement of the arbitration, the arbitrator discloses to the parties all facts which might reasonably cause one of them to ask for disqualification of the arbitrator. The AAA, under whose auspices this arbitration was conducted, indorses precisely such an approach, by requiring every arbitrator to "disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an arbitrator." In its formal notice of appointment to arbitrators the AAA underlines the thrust of this requirement by directing that "any doubt should be resolved in favor of disclosure." This salutary approach, formalized in the rules of an organization responsible for administering a substantial portion of arbitration work in the State, has thus become part of the custom and usage in arbitration proceedings and is properly a requirement in all arbitrations conducted pursuant to CPLR article 75.
We are mindful of the possibility, stressed by our dissenting colleagues, that a disgruntled party may belatedly seize upon a claim of bias in an attempt to overturn an unfavorable award. But we conclude that a rule requiring maximum prehearing disclosure must in the long run be productive of arbitral stability. Had the arbitrators in this case made the proper disclosure, it is unlikely that this case would be here. Rytex would have been in a position to determine in advance of the hearing whether arbitrators Burnish and Lincer had too close a relationship with Stevens to permit the case to be submitted to them. Had Rytex proceeded to arbitration with such knowledge it *129 would not be in a position to later challenge the award on the grounds of bias.
This does not mean that a party to an arbitration may sit idly back and rely exclusively upon the arbitrator's disclosure. If a party goes forward with arbitration, having actual knowledge of the arbitrator's bias, or of facts that reasonably should have prompted further, limited inquiry, it may not later claim bias based upon the failure to disclose such facts. While such responsibility to ascertain potentially disqualifying facts does rest upon the parties, the major burden of disclosure properly falls upon the arbitrator. After all, the arbitrator is in a far better position than the parties to determine and reveal those facts that might give rise to an inference of bias. Further, the very nature of the arbitrator's quasi-judicial function, particularly since it is subject to only limited judicial review, demands no less a duty to disclose than would be expected of a Judge (Commonwealth Corp. v. Casualty Co., 393 U. S., at pp. 148-150, supra; Matter of Labor Relations Section v. Gordon, 41 A D 2d, pp. 27-28, supra). In the present case we do not think that the extent of the relationship of the Deering and Kenyon firms to Stevens was so readily ascertainable to Rytex that it was not justified in relying upon the limited disclosure made by the arbitrators. Nor is there convincing evidence that Rytex came by such knowledge independently or did not act in good faith in seeking to overturn an adverse arbitration award.
We, of course, do not require an arbitrator to reveal every facet of his past (WHITE, J., concurring in Commonwealth Corp. v. Casualty Co., 393 U. S., at p. 151, supra). But if the arbitrator follows reasonable judgment in disclosing potentially disqualifying facts, the number of cases in which alleged bias is subsequently litigated will be small indeed. And in that residuum of cases it is unlikely that the undisclosed facts would be of sufficient magnitude to justify vacating the award.
By our determination we do not hold that any kind of business relationship would disqualify a prospective arbitrator, but we do hold that in the interest of fairness (and to avoid just such a litigation as we deal with here) all arbitrators before entering upon their duties should make known any relationship direct or indirect that they have with any party to the arbitration, and *130 disclose all facts known to them which might indicate any interest or create a presumption of bias.
The order of the Appellate Division should be affirmed.
WACHTLER, J. (dissenting).
It is well established that "Courts are loath to sustain belated claims of disqualification after an adverse award". (Matter of Atlantic Rayon Corp. [Goldsmith], 277 App. Div. 554, 556; see, also, Cross Props. [Gimbel Bros.], 15 A D 2d 913, 914, affd. 12 N Y 2d 806; Matter of Meinig Co. v. Katakura & Co., 241 App. Div. 406, 407, affd. 266 N.Y. 418; Matter of Perl [General Fire & Cas. Co.], 34 A D 2d 748; Matter of Garfield [Wiest], 432 F.2d 849.) The "disgruntled party" (Commonwealth Corp. v. Casualty Co., 393 U. S. 145, 151 [WHITE, J., concurring]) should not be allowed to abrogate a completed and fairly conducted arbitration procedure merely because it has found some remote connection between an arbitrator and one of the parties. If we allow a party to triumph by taking what one court referred to as the "sour grapes" position (Matter of Baar & Beards [Oleg Cassini, Inc.], 37 A D 2d 106, 109, revd. on other grounds 30 N Y 2d 649) we will be greatly undermining the arbitration process. I believe a close review of the case now before us will amply demonstrate that sour grapes was paramount over possible bias.
The first arbitrator about whom complaint is made (Burnish) was appointed by both of the parties. He worked for Deering, the third largest textile manufacturer in the country. The other arbitrator against whom an ex post facto complaint of bias was lodged (Lincer) was a sales manager for Kenyon, a large textile finishing firm. Rytex, the party lodging the bias complaints, is a print stylist firm  appellant Stevens is the country's second largest textile manufacturing company.
It is important to note that the company affiliations of both Burnish and Lincer were disclosed by the American Arbitration Association to the parties several months before the hearings. It would have been quite easy for Rytex to make inquiries about the arbitrators before the arbitration began. The majority states that if the party seeking to vacate the arbitration award knew "facts that reasonably should have prompted further, limited inquiry, it may not later claim bias based upon the failure to disclose such facts". It is evident that in this case the *131 most superficial of investigations would have shown the allegedly biased connections between the arbitrators and Stevens since the president of Rytex said he discovered the connections after the conclusion of the arbitration by merely talking "with various people in the trade". Rytex felt that the information it had "prompted further inquiry", and there is no evidence that it had any more information at its disposal after the hearing than before it. It comes as no shock that Rytex's curiosity was piqued only after it was faced with an adverse award in the arbitration proceedings.
I believe this court should lay down a rule that an arbitration proceeding may be vacated for alleged bias only if the information brought to light after the proceeding could not have been discovered with due diligence before the proceeding. Obviously, the standard of due diligence will turn on such factors as the length of time available for investigation prior to the hearings and the ease with which the information could have been discovered. A party should not have to undertake a thorough investigation beyond "asking around" and conducting at least a minimal voir dire of the arbitrators.[1]
In the Cross Props. case (15 A D 2d 913, 914, supra) the court correctly stated that: "`If we were to give heed to the contentions of every unsuccessful litigant, based upon the flimsy ground[s] assigned here, it would be well nigh impossible to carry out that part of the agreement pertaining to arbitration'".
The case before us illustrates that pronouncement. In fact, it may have been well nigh impossible to carry out the arbitration in question. The two American Arbitration Association appointments were the last two men on the list. The majority of this court has held that the arbitrators were disqualified from rendering an award against Rytex. However, under the theory spelled out by our court today, Stevens may have had just as good a complaint of bias as Rytex. After all Deering competed *132 against Stevens far more than it worked with Stevens. And Stevens had its own finishing plants so it also competed with Kenyon.
In other words, each party to this proceeding could have sat back and waited for the arbitrators' ruling before deciding to press a complaint of alleged bias. The decision of the majority today not only fails to encourage preproceedings investigations, it actively discourages them. If a party uncovers some alleged bias during a voir dire of the arbitrators or by "asking around" he will have lost the ace in the hole which would rescue him from the effects of an adverse decision by the arbitrators.
Of course an arbitrator has a duty of disclosure (see Commonwealth Corp. v. Continental Cas. Co., 393 U. S. 145, 152 [WHITE, J., concurring]; Matter of Weinrott [Carp], 32 N Y 2d 190, 201). In the case at bar, that duty was spelled out by rule 18 of the American Arbitration Association. It should be noted that disclosure, under that rule, is mandated where some connection is "likely to create a presumption of bias" (emphasis added). The rule does not mandate a disclosure when a connection may possibly create a presumption of bias although an arbitrator should even disclose possible "biases". But that does not mean we should overturn an arbitrator's award when the bias was only possible and was easily ascertainable before the proceedings began.[2]
Neither of the contested arbitrators in this case had any direct dealings with Stevens. This is a far cry from the much relied upon Commonwealth case (supra, p. 146) where the arbitrator had performed work for one of the parties on the very same projects that were the subject of the litigation. Similarly, in Matter of Milliken Woolens (Weber Knit Sportswear) (11 A D 2d 166, affd. 9 N Y 2d 878) the arbitrator's law firm was cocounsel with respondent's law firm in many matters that were still pending in the courts (p. 169). Furthermore in Milliken (supra, p. 170) the American Arbitration Association representative selecting the arbitrators left the American Arbitration Association *133 to become associated with respondent's counsel before the arbitration had terminated.
The mere fact that the arbitrators' firms did business with Stevens should not be grounds for disqualification. The Stevens Company did over one billion dollars of business all over the country. Its total dealings with both Kenyon and Deering amounted to less than ¼ of 1% of its annual volume. As this court stated in Matter of Weinrott (Carp) (32 N Y 2d 190, 201), "in the modern world of sprawling corporations and rapid travel, it would be most difficult to find a large number of well qualified arbitrators who did not have some indirect relationship with one of the parties to the arbitration".
In the Cross Props. case (15 A D 2d 913, 914, supra) the court was faced with an allegedly biased connection similar to the one at bar. There the court stated: "The nature and magnitude of the real estate company with which Spear was affiliated would make it most likely that at one time or another there would be some contact with one of the largest department stores in the City of New York. Whether or not Spear disclosed such relationship to the Tribunal Clerk is of no consequence." The dealings in the Cross Props. case were more than occasional or casual (see p. 915, VALENTE, J., dissenting), but the award was confirmed. That decision could well be explained by the application of a "due diligence" test, i.e., some potential relationship between an arbitrator and a party was so manifest that the appellant should have taken some rudimentary steps to investigate the possibly biasing connection.
In the Meinig Co. case (241 App. Div. 406, 407, supra) the award was allowed to stand even though, inter alia, the arbitrator was an officer of the firm doing business with the victorious party. In the case at bar, neither arbitrator was an officer of his firm so the link through their employer to Stevens is even more tenuous than in the Meinig case.
As the Appellate Division noted in its opinion, there was no evidence of wrongdoing on the part of the arbitrators. Nor was there any wrongdoing in the selection of the arbitrators. This is in marked contrast to Matter of Milliken (11 A D 2d 166, 170, supra), where the arbitrators selection was found to have stemmed from the respondent. It is also distinguishable *134 from Milliken, (supra, p. 169) in that in Milliken there was a misleading letter sent to the parties by the arbitrator in question. Nor is this a case similar to Matter of Baar & Beards (37 A D 2d 106, 109, supra) where the arbitrator's dismissal was requested before the proceedings and turned down by an American Arbitration Association Tribunal Clerk who knew that the arbitrator was on the American Arbitration Association Board of Directors. In short, there was no wrongdoing of any type or degree in the case at bar.
Given all of the facts, I think it is most unwise to overturn the arbitrators' award. Obviously, the more experience the expert has had in the field, the greater is the possibility that he will have had some contact, direct or indirect, with one of the parties to the arbitration. The Appellate Division in its decision below stated (p. 16): "More often than not they are in the very business which has led to the controversy between the adverse parties and are selected because of their experience in that particular business". The Commonwealth court made the same observation (supra, pp. 148-149). "It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases". In his concurrence in Commonwealth (supra, p. 150) Justice WHITE stated: "I see no reason automatically to disqualify the best informed and most capable potential arbitrators".
If it becomes impossible to secure truly expert arbitrators for these types of cases, more and more cases will end up on the courts, by design and of necessity. (See Garfield & Co. [Wiest], 432 F.2d 849.) That will, in turn, work against this State's legislative policy of encouraging arbitration (Matter of Weinrott [Carp], 32 N Y 2d 190, 199, supra).
Naturally, arbitration should never be encouraged at the cost of fairness and due process of law. In the case at bar, the fact that Lincer was a sales manager for a company doing business with the Stevens Co. is bothersome. Even if Lincer had no previous contacts with Stevens, it is not at all unreasonable to fear a potential bias on his part in contemplation of future business dealings he might personally negotiate with Stevens. Therefore, had Lincer been challenged for cause before the proceedings *135 had begun failure to remove him could well have constituted grounds for vacatur of the award. However, as here, when the alleged bias is so easily discoverable before the proceedings, I do not think our court should vacate an arbitration award absent a showing of actual misconduct on the part of the arbitrators in question.
Accordingly, I would reverse the order of the Appellate Division and reinstate the Supreme Court's order confirming the arbitration award. (See CPLR 7511.)
Order affirmed, with costs.
NOTES
[*] The record is not entirely clear as to the magnitude of Deering's relationship to Stevens, nor does it indicate that Burnish's position with Deering put him in as delicate a position as Lincer's with Kenyon. We conclude that the relationship between Lincer, his employer Kenyon, and Stevens, is alone adequate to justify the vacation of the award.
[1] The grounds for disqualification in our case are flimsy when compared with those in the case of Cook Ind. v. Itoh & Co. (Amer.), 449 F.2d 106, cert. den. 405 U. S. 921; see, also, Garfield & Co. (Wiest), 432 F.2d 849, 853. Our standards for disqualification are far more stringent than the Federal rule for this State, an undesirable situation (cf. Matter of Weinrott [Carp], 32 N Y 2d 190, 199, n. 2).
[2] In Matter of Perl v. General Fire & Cas. Co. (34 A D 2d 748) one of the arbitrators had a dealing with one of the parties to the arbitration that was considered too peripheral to constitute bias. In our case the "possibility of bias" was not even that strong.