Wachtler, J. (dissenting).
It is well established that “ Courts are loath to sustain belated claims of disqualification after an adverse award ”. (Matter of Atlantic Rayon Corp. [Goldsmith], 277 App. Div. 554, 556; see, also, Cross Props. [Gimbel Bros.], 15 A D 2d 913, 914, affd. 12 N Y 2d 806; Matter of Meinig Co. v. Katakura & Co., 241 App. Div. 406, 407, affd. 266 N. Y. 418; Matter of Perl [General Fire & Cas. Co.], 34 A D 2d 748; Matter of Garfield [Wiest], 432 F. 2d 849.) . The “ disgruntled party ” (Commonwealth Corp. v. Casualty Co., 393 U. S. 145, 151 [White, J., concurring]) should not be allowed to abrogate a completed and fairly conducted arbitration procedure merely because it has found some remote connection between an arbitrator and one of the parties. If we allow a party to triumph by taking what one court referred to as the “ sour grapes ” position (Matter of Baar & Beards [Oleg Cassini, Inc.], 37 A D 2d 106, 109, revd. on other grounds 30 N Y 2d 649) we will be greatly undermining the arbitration process. I believe a close review of the case now before us will amply demonstrate that sour grapes was paramount over possible bias.
The first arbitrator about whom complaint is made (Burnish) was appointed by both of the parties. He worked for Deering, the third largest textile manufacturer in the country. The. other arbitrator against whom an ex post facto complaint of bias was lodged (Lincer) was a sales manager for Kenyon, a large textile finishing firm. Eytex, the party lodging the bias complaints, is a print stylist firm — appellant Stevens is the country’s second largest textile manufacturing company.
It is important to note that the company affiliations of both Burnish and Lincer were disclosed by the American Arbitration Association to the parties several months before the hearings. It would have been quite easy for Eytex to make inquiries about the arbitrators before the arbitration began. The majority states that if the party seeking to vacate the arbitration award knew “ facts that reasonably should have prompted further, limited inquiry, it may not later claim bias based upon the failure to disclose such facts ”. It is evident that in this case the *131 most superficial of investigations would have shown the allegedly biased connections between the arbitrators and Stevens since the president of Bytex said he discovered the connections after the conclusion of the arbitration by merely talking “ with various people in the trade ”. Bytex felt that the information it had “ prompted further inquiry ”, and there is no evidence that it had any more information at its disposal after the hearing than before it. It comes as no shock that Bytex’s curiosity was piqued only after it was faced with an adverse award in the arbitration proceedings.
I believe this court should lay down a rule that an arbitration proceeding may be vacated for alleged bias only if the information brought to light after the proceeding could not have been discovered with due diligence before the proceeding. Obviously, the standard of due diligence will turn on such factors as the length of time available for investigation prior to the hearings and the ease with which the information could have been discovered. A party should not have to undertake a thorough investigation beyond “ asking around ” and conducting at least a minimal voir dire of the arbitrators.[1]
In the Cross Props. case (15 A D 2d 913, 914, supra) the court correctly stated that: “ ‘ If we were to give heed to the contentions of every unsuccessful litigant, based upon the flimsy ground[s] assigned here, it would be well nigh impossible to carry out that part of the agreement pertaining to arbitration ’ ”.
The case before us illustrates that pronouncement. In fact, it may have been well nigh impossible to carry out the arbitration in question. The two American Arbitration Association appointments were the last two men on the list. The majority of this court has held that the arbitrators were disqualified from rendering an award against Bytex. However, under the theory spelled out by our court today, Stevens may have had just as good a complaint of bias as Bytex. After all Deering competed *132 against Stevens far more than it worked with Stevens. And Stevens had its own finishing plants so it also competed with Kenyon.
In other words, each party to this proceeding could have sat back and waited for the arbitrators’ ruling before deciding to press a complaint of alleged bias. The decision of the majority today not only fails to encourage preproceedings investigations, it actively discourages them. If a party uncovers some alleged bias during a voir dire of the arbitrators or by “ asking around ” he will have lost the ace in the hole which would rescue him from the effects of an adverse decision by the arbitrators.
Of course an arbitrator has a duty of disclosure (see Commonwealth Corp. v. Continental Cas. Co., 393 U. S. 145, 152 [White, J., concurring]; Matter of Weinrott [Carp], 32 N Y 2d 190, 201). In the case at bar, that duty was spelled out by rule 18 of the American Arbitration Association. It should be noted that disclosure, under that rule, is mandated where some connection is “ likely to create a presumption of bias ” (emphasis added). The rule does not mandate a disclosure when a connection may possibly create a presumption of bias although an arbitrator should even disclose possible “ biases ”. But that does not mean we should overturn an arbitrator’s award when the bias was only possible and was easily ascertainable before the proceedings began.[2]
Neither of the contested arbitrators in this case had any direct dealings with Stevens. This is a far cry from the much relied upon Commonwealth case (supra, p. 146) where the arbitrator had performed work for one of the parties on the very same projects that were the subject of the litigation. Similarly, in Matter of Milliken Woolens (Weber Knit Sportswear) (11 A D 2d 166, affd. 9 N Y 2d 878) the arbitrator’s law firm was cocounsel with respondent’s law firm in many matters that were still pending in the courts (p. 169). Furthermore in Milliken (supra, p. 170) the American Arbitration Association representative selecting the arbitrators left the American Arbitration Associ *133 ation to become associated with respondent’s counsel before the arbitration had terminated.
The mere fact that the arbitrators’ firms did business with Stevens should not be grounds for disqualification. The Stevens Company did over one billion dollars of business all over the country. Its total dealings with both Kenyon and Deering amounted to less than % of Vfo of its annual volume. As this court stated in Matter of Weinrott (Carp) (32 N Y 2d 190, 201), “ in the modern world of sprawling corporations and rapid travel, it would be most difficult to find a large number of well qualified arbitrators who did not have some indirect relationship with one of the parties to the arbitration ”.
In the Cross Props. case (15 A D 2d 913, 914, supra) the court was faced with an allegedly biased connection similar to the one at bar. There the court stated: “ The nature and magnitude of the real estate company with which Spear was affiliated would make it most likely that at one time or another there would be some contact with one of the largest department stores in the City of New York. "Whether or not Spear disclosed such relationship to the Tribunal Clerk is of no consequence.” The dealings in the Cross Props, case were more than occasional or casual (see p. 915, Valente, J., dissenting), but the award was confirmed. That decision could well be explained by the application of a “ due diligence ” test, i.e., some potential relationship between an arbitrator and a party was so manifest that the appellant should have taken some rudimentary steps to investigate the possibly biasing connection.
In the Meinig Co. case (241 App. Div. 406, 407, supra) the award was allowed to stand even though, inter alia, the arbitrator was an officer of the firm doing business with the victorious party. In the case at bar, neither arbitrator was an officer of his firm so the link through their employer to Stevens is even more tenuous than in the Meinig case.
As the Appellate Division noted in its opinion, there was no evidence of wrongdoing on the part of the arbitrators. Nor was there any wrongdoing in the selection of the arbitrators. This is in marked contrast to Matter of Milliken (11 A D 2d 166, 170, supra), where the arbitrators selection was found to have stemmed from the respondent. It is also distinguishable *134 from Milliken, (supra, p. 169) in that in Milliken there was a misleading letter sent to the parties by the arbitrator in question. Nor is this a case similar to Matter of Baar & Beards (37 A D 2d 106, 109, supra) where the arbitrator’s dismissal was requested before the proceedings and turned down by an American Arbitration Association Tribunal Clerk who knew that the arbitrator was on the American Arbitration Association Board of Directors. In short, there was no wrongdoing of any type or degree in the case at bar.
Given all of the facts, I think it is most unwise to overturn the arbitrators’ award. Obviously, the more experience the expert has had in the field, the greater is the possibility that he will have had some contact, direct or indirect, with one of the parties to the arbitration. The Appellate Division in its decision below stated (p. 16): “ More often than not they are in the very business which has led to the controversy between the adverse parties and are selected because of their experience in that particular business ”. The Commonwealth court made the same observation (supra, pp. 148-149). “ It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases ”. In his concurrence in Commonwealth (supra, p. 150) Justice White stated: “ I see no reason automatically to disqualify the best informed and most capable potential arbitrators ”.
If it becomes impossible to secure truly expert arbitrators for these types of cases, more and more cases will end up on the courts, by design and of necessity. (See Garfield & Co. [Wiest], 432 F. 2d 849.) That will, in turn, work against this State’s legislative policy of encouraging arbitration (Matter of Weinrott [Carp], 32 N Y 2d 190, 199, supra).
Naturally, arbitration should never be encouraged at the cost of fairness and due process of law. In the case at bar, the fact that Lincer was a sales manager for a company doing business with the Stevens Co. is bothersome. Even if Lincer had no previous contacts with Stevens, it is not at all unreasonable to fear a potential bias on his part in contemplation of future business dealings he might personally negotiate with Stevens. Therefore, had Lincer been challenged for cause before the pro *135 ceedings had begun failure to remove him could well have constituted grounds for vacatur of the award. However, as here, when the alleged bias is so easily discoverable before the proceedings, I do not think our court should vacate an arbitration award absent a showing of actual misconduct on the part of the arbitrators in question.
Accordingly, I would reverse the order of the Appellate Division and reinstate the Supreme Court’s order confirming the arbitration award. (See CPLR 7511.)
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Rabin ; Judge Wachtler dissents and votes to reverse in a separate opinion in which Judge Jones concurs; Judge Stevens taking no part.
Order affirmed, with costs.

. The grounds for disqualification in our case are flimsy when compared with those in the case of Cook Ind. v. Itoh & Co. (Amer.), 449 F. 2d 106, cert, den. 405 U. S. 921; see, also, Garfield & Co. (Wiest), 432 F. 2d 849, 853. Our standards for disqualification are far more stringent than the Federal rule for this State, an undesirable situation (cf. Matter of Weinrott [Carp], 32 N Y 2d 190, 199, n. 2).

. In Matter of Perl v. General Fire & Cas. Co. (34 A D 2d 748) one of the arbitrators had a dealing with one of the parties to the arbitration that was considered too peripheral to constitute bias. In our case the “ possibility of bias ” was not even that strong.