793 F.2d 1293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED PAINTING COMPANY, Plaintiff-Appellant,
vs.
PAINTERS DISTRICT COUNCIL, NO. 12, Defendant-Appellee.
 85-5412
 United States Court of Appeals, Sixth Circuit.
 5/23/86
 
 Before: KRUPANSKY, GUY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 United Painting Company (United) appeals from the partial denial of its request to vacate an arbitration award. United is an industrial subcontractor. Although its principal place of business and place of incorporation is New York, it bids on jobs and does work nationwide.
 
 
 2
 In 1980, United was the successful bidder on a painting job in Marysville, Ohio, for Kentucky Power Cooperative, Inc. Since United had no local work force, it was necessary that it hire painters locally and, in order to do so, it had to enter into a special agreement with the defendant, Painters District Council, No. 12 (Union), the exclusive representative of all union painters in the area. The agreement entered into between United and the Union consisted of an agreement that both parties be bound by all the terms and conditions of the certain agreement which then existed between the Union and the Cincinnati Painting and Decorating Contractors of America and the Independent Painting Contractors of Cincinnati, Ohio (Agreement).
 
 
 3
 United hired workers represented by the Union and work progressed without incident until Thanksgiving weekend in November of 1981. Work stopped for the four-day holiday period and, upon resumption on the following Monday, it was discovered that six pick (scaffold) boards were missing. Investigation convinced United that two employees, Gilbert Jester and Ernie Valentine, were responsible, and both were discharged on December 1, 1981. Criminal charges were also brought against the two, but such charges were dismissed for insufficient evidence after trial.
 
 
 4
 Jester and Valentine filed grievances over their termination which were ultimately heard by the Painters Joint Board (Board) on February 3, 1982. The Board is the designated arbitrator under the Agreement. On February 5, 1982, the Board ruled in favor of Jester and Valentine and ordered both reinstated with back pay. On March 9, 1982, United filed its complaint in the district court pursuant to the provisions of 29 U.S.C. Sec. 185, et seq., seeking vacation of the arbitration award. The matter was referred to a magistrate acting as a special master pursuant to Fed. R. Civ. P. 53(f) and 28 U.S.C. Sec. 636(b)(2). It was heard by the magistrate on cross-motions for summary judgment.
 
 
 5
 In a well-considered opinion, Magistrate Hood concluded on January 3, 1985, that the award as to Jester should be upheld and the award as to Valentine should be vacated. United filed objections to the magistrate's report which were denied by the district court. The district court adopted the report and recommendation of the magistrate sitting as a special master as the findings of fact and conclusions of law of the court. Judgment was entered accordingly on February 8, 1985.[1]
 
 
 6
 On Appeal, United raises three issues as to the Jester award: (1) Was the Joint Trade Board improperly composed so as to render its decision void and unenforceable; (2) Was the decision of the Joint Trade Board unenforceable due to fraud; and (3) Was the remedy of reinstatement of Jester an abuse of the Board's discretion. These issues will be discussed seriatim, although issues one and two will be considered together due to their similarity.
 
 I.
 THE COMPOSITION OF THE BOARD
 
 7
 Article XV, Section 4, of the Agreement states:
 
 
 8
 Members of the Board. The Board shall be composed of eight (8) members. Four shall be designated by District Council No. 12, two by the Cincinnati Chapter of PDCA, and two by the Independent Contractors.
 
 
 9
 Contrary to the language of the Agreement, the Board, on the date of hearing, did not have two members designated by the Independent Contractors. In fact, the Independent Painting Contractors of Cincinnati, Ohio, referred to in the Agreement between United and the Union had not even existed for the past ten years. During that period of time, the Board had been composed of four contractor members chosen by PDCA and four union members chosen by District Council No. 12. This is the manner in which the Board was constituted for the hearing in question.
 
 
 10
 The magistrate resolved this issue by ruling that it was for the Board itself to determine whether the 'procedural aspects of the arbitration clause had been followed.' (App. 23)[2]
 
 
 11
 There are two problems with this resolution. First, was the composition of the Board a 'procedural' matter? Second, did the Board even have occasion to consider this issue, since at the time of the hearing United was unaware that the Board was not constituted as directed by the Agreement and never raised the issue?[3] Although there is case support for the proposition that the composition of an arbitration board is a procedural matter to be resolved by the Board,[4] since the issue was never put before the Board here, arguably there was no Board resolution. We conclude, however, that these problems are not such as to preclude this court from resolving this issue. United accepted the Board as presented on the date of the hearing and did, in fact, make inquiry as to who some of the members were. The case law is clear that the loser in an arbitration hearing is not permitted for the first time to raise objections to the panel after the award has been made. Garfield & Co. v. Wiest, 432 F.2d 849 (2nd Cir. 1970), cert. denied, 401 U.S. 940 (1971).
 
 
 12
 Furthermore, the objections made by United to the panel are not well founded. The Independent Contractors group had not existed for ten years and a substitute procedure was instituted which was true to the original intention of the parties to have equal representation on the panel from both the contractors and the Union. Where there has been a default in the literal compliance with arbitration procedures, the initial intention of the parties is an important consideration. Chauffeurs, Teamsters, and Helpers, Local Union No. 765 v. Stroehmann Bros. Co., 615 F.2d 1092 (3rd Cir. 1980). Technical violations which do not depart from the intent of the parties should be accorded little significance.[5]
 
 
 13
 Defendant's second contention is also unconvincing. It is true that, whereas the collective agreement provided for three union and three employer members, the tribunal was composed in fact of three union and only two employer members. The fact that the board was numerically unbalanced did not, however, result in any substantive voting disparity between the two groups of representatives: for while the union members cast one vote apiece, the employer members were granted one and one-half votes each. Therefore, although the composition of the tribunal constituted a technical violation of the collective agreement, the actual voting strengths of the two groups of members reflected the purpose of that agreement and did not serve so to distort it as to require a dismissal of this action to enforce that proceeding.
 
 
 14
 Local 416, Sheetmetal Workers Int. Assn. v. Helgesteel Corp., 335 F. Supp. 812, 815 (W.D. Wis. 1971).
 
 
 15
 Having resolved the issue of the composition of the Board adversely to the contentions of United, we need spend little time on its claim of fraud since the only fraud alleged is the composition of the Board. Suffice it to say that United's allegations of fraud are wholly conclusory and ill founded. We could find no fraud from the fact that other contractor representatives replaced those from an organization now ten years defunct.
 
 II.
 THE REINSTATEMENT OF JESTER
 
 16
 United makes two arguments on this issue. First, it argues that the only remedy available to the Board was to award liquidated damages and, second, that since United does not conduct regular business in Kentucky and only hires local labor for a given job, it cannot be compelled to reinstate an employee who would have lost his job anyway.
 
 
 17
 United's argument as to liquidated damages has no merit. The pertinent section of the Agreement reads:
 
 
 18
 The Joint Trade Board is hereby vested with complete authority and power to investigate mediate, or adjust, compose, and/or arbitrate or determine all issues and questions presented to such tribunal, and shall have power to set such liquidated damages as is just for any violation.
 
 
 19
 We read the above language to mean that the Board, in addition to the other powers it possesses, has the power to set liquidated damages in an appropriate situation. It would be totally inconsistent with labor agreements in general and the normal grievance resolution procedure to limit the Board as United suggests.
 
 
 20
 United's argument relative to the practical aspects of reinstatement of Jester, however, has merit. United bids on jobs all over the United States and when it is the successful bidder it customarily dips into the local labor pool via the Union hiring roll for the personnel it needs for the duration of the job. At the time Jester was ordered reinstated, the job was not yet completed but, as the legal aftermath of the arbitration hearing has dragged on, the job has been long since completed. It would appear that had Jester not had a disciplinary problem he would have stayed with the job to completion and then been terminated along with all the other local Union help. The record is not completely clear on this point, however, and the Union does not even address it in its brief. Accordingly, we remand the issue of reinstatement to the district court with instructions to determine when, in the normal course of events, Jester would have been terminated and award back pay to that point in time, less any unemployment compensation or other earnings received as directed in the April 5, 1985 amended judgment.
 
 
 21
 We thus AFFIRM the district court, except for the order of reinstatement of Jester, which is REVERSED and REMANDED for further proceedings.
 
 
 
 [1]
 The Union has not cross-appealed the adverse decision as to Valentine
 
 
 [2]
 The magistrate relied on John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964), and Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195 v. Cross Brothers Meat Packers, Inc., 518 F.2d 1113 (3rd Cir. 1975), to support this conclusion. Both cases do state the general proposition that '[o]nce it has been determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.' Wiley, 376 U.S. at 557
 
 
 [3]
 The Union did raise the issue in the district court, however, and it is properly before us at this time, even though it was not addressed substantively by the district court
 
 
 [4]
 See, e.g., Amalgamated Meat Cutters, supra, note 2
 
 
 [5]
 United argues that, since they were not a local contractor, having panel members appointed by the Independent Painters group was important to them. They support this argument with neither fact nor logic, however. First of all, the Independent group had not existed for ten years, so they could not be an ally of United. Second, the group, when it existed, was the Independent Painting Contractors of Cincinnati, and it does not follow that a New York contractor would get friendly treatment from them as implied by United. Lastly, the issue was a classic labor-management issue and really had nothing to do with where the parties were from