In the Matter of the arbitration between
BEHRING INTERNATIONAL, INC.

and

LOCAL 295 INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN AND
HELPERS OF AMERICA.

No. 77–C–507.

United States District Court,
E. D. New York.

April 27, 1978.

---

Roger H. Briton and Andrew N. Zelman, of Surrey, Karasik, Morse & Seham, New York City, for petitioner.

Joseph S. Rosenthal, Donald L. Sapir and David Kramer of Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, New York City, for respondent.

## MEMORANDUM and ORDER

COSTANTINO, District Judge.

The petitioner, Behring International, Inc. ("Behring"), instituted this action to vacate an arbitration award rendered in favor of respondent, Local 295, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 295") on two grounds: first, that the award exceeded the scope of the underlying collective bargaining agreement, and second, that certain members of the arbitration panel exhibited evident partiality during the arbitration which prevented a fair and impartial resolution of the contractual dispute. Local 295 cross moved to confirm the award and to have judgment entered thereon.

In July 1976, Behring and Local 295 entered into a currently effective collective bargaining agreement ("Industry Agreement"). Pursuant to the Industry Agreement, all disputes arising between Local 295 and Behring are to be submitted to the Local 295 Joint Grievance Settlement Board (the "Board"). The authority of the Board is limited only by the condition that it "shall not . . . add to or subtract from [the] Agreement or render any decisions [which] conflict with . . . or . . . modif[y] [the] Agreement in any way." Industry Agreement at § 22, ¶ 2(f).

The Industry Agreement further provides for payment of weekly contributions by Behring to the Local 295 Employe Group Welfare, Severance and Pension Funds (the "Funds") on behalf of each employee performing bargaining unit work. Industry Agreement at §§ 12(A), 13(A). The Funds were established by separate Agreements and Declarations of Trust, the provisions of which are fully incorporated into the Industry Agreement.

In March 1976, in order to determine whether full contributions were being paid as required by the Agreements, an auditor for the Funds requested to inspect a comprehensive set of payroll books and records for all Behring employees throughout the United States. However, data was provided only for those persons who Behring determined were performing work within the bargaining unit represented by Local 295.

On February 24, 1977, the dispute was submitted to the Board. Both parties appeared by counsel and were given an opportunity to present evidence in order to justify their positions. At the conclusion of the hearing, the arbitrators announced that the

grievance was unanimously upheld. A written award' was subsequently rendered which specifically authorized a Local 295 auditor "to enter upon the premises of [Behring] to examine and copy such of the books . . . as may be necessary . . to determine whether . . . full payment [is being made] . . . as required by the Collective Bargaining Agreement between the parties . . .." Moscowitz Affidavit, Exhibit 10.

Behring's first contention in support of the petition to vacate the award is that the arbitrators exceeded their authority under the Industry Agreement. Jurisdiction is grounded in the United States Arbitration Act, 9 U.S.C. § 10(d).

The permissible scope of federal review of an arbitration award is extremely circumscribed where the powers of the arbitrators are challenged. Under the doctrine of *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (*"Steelworkers"*), an award is legitimate and enforceable whenever "it *draws its essence* from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. at 1361. (emphasis added). Behring argues here that since the Industry Agreement protects only those employees in limited job classifications within the New York metropolitan area, the authorization to inspect payroll records of *all* personnel fails to satisfy even the minimal requirement of the "essence test" and must be vacated. The court does not agree.

Sections 13(B) and 14(C) of the Industry Agreement specifically authorize the trust fund administrator to review the books and records of Behring which relate to *defaults* in the payment of trust contributions. Additionally, Section 14 of the Agreements and Declarations of Trust provides that:

> [t]he Trustees shall have the power to require any employer and an employer, when so required, shall furnish to the Trustees such information and reports as they may require in the performance of their duties under this Agreement and Declaration of Trust. The Trustees or any authorized agent or representative of the Trustees shall have the right, at all reasonable times during business hours, *to enter upon the premises of employers to examine and copy such of the books, records, papers and reports of said employers as may be necessary to permit the Trustees to determine whether said employers are making full payment to the Trustees of the amounts required by the aforementioned Collective Bargaining Agreement. . . .* (emphasis added)

Thus, on its face, the arbitration award almost precisely tracks the operative language of the Trust Agreements, the provisions of which were expressly incorporated into the Industry Agreement. The arbitrators were within the permissible scope of their discretion in referring to an extrinsic document (The Agreements and Declarations of Trust) which was directly relevant to the dispute, *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516*, 500 F.2d 921 (2d Cir. 1974).

Further, the essence of the dispute concerned the extent of the trustees' inspection powers. The imprecise wording of the Agreements naturally gave rise to the development of the question, which might have been logically resolved in varying ways. However, as the Supreme Court stated in *Steelworkers, supra*, 363 U.S., at 599, 80 S.Ct., at 1362:

> [t]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*See also United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The Supreme Court also recognized in *Steelworkers, supra*, that resolution of labor disputes often requires knowledge of the customs and usages of a particular factory

or industry as a whole, 363 U.S. at 596, 80 S.Ct. 1358, something with which arbitrators are more familiar than are the courts.

■ In this case, the arbitrators' decision clearly satisfies the "essence test." As previously stated, Section 14 of the Agreements and Declarations of Trust, which was expressly incorporated into the Industry Agreement, provides that the trustees shall have access to "such of the books, records, papers and reports of said employers *as may be necessary* to determine whether said employers are making full payment. . . ." (emphasis added). The arbitrators gave that language a broad reading, and concluded that a widespread audit would be necessary to determine whether full contributions had been made pursuant to the terms of the Agreements. The court finds that that decision of the arbitrators was well within the scope of the language of § 14 of the Agreements and Declarations of Trust (and therefore within the scope of the Industry Agreement which incorporated that language), and that it cannot be set aside for failure to satisfy the "essence test."

■ Where, however, a specific facet of an arbitration award manifests an infidelity to the authority expressed in the underlying contract, that limited portion of the award is void and unenforceable. *See Steelworkers, supra* and *Nuest v. Westinghouse Air Brake Co.,* 313 F.Supp. 1228, 1236 (S.D.Ill.1970). Here, the Industry Agreement, as originally enacted, applied to all warehousemen and drivers. However, a subsequent side agreement was adopted which limited the scope of the main agreement to employees within the New York metropolitan area.[1] Since the arbitrators had no authority to extend the scope of the Agreement, *see* Industry Agreement at § 22, ¶ 2(f), their award must be limited to those books and records dealing with employees in the New York metropolitan area.

Behring next challenges the award on the ground that the employer-designated members of the arbitration panel exhibited "evident partiality" during the resolution of the dispute. Since the affidavits submitted on behalf of the parties presented conflicting versions of the events, an evidentiary hearing was conducted on January 4, 1978. After careful consideration of the moving papers and the testimony presented during the hearing, the court finds that pursuant to Section 22 of the Industry Agreement, Local 295 notified Behring that a meeting of the member employers would be held for the purpose of electing employer-designated members of the "Board." The notice was not received until the morning of the day on which the meeting was scheduled. Behring neither attended the meeting nor requested an adjournment based upon the untimeliness of the notification, despite a contractual provision that "[a]ll of the Employers signatory to [the] Agreement shall be deemed bound by the action taken at said meeting, whether or not [the] Employer or its representative attended such meeting." Industry Agreement at § 22(1)(a) (step 3). Subsequently Behring was advised that Frank LaBell and Joseph Fucarino had been selected as the employer-designated members of the Board.

On February 24, 1977, the dispute was submitted to the Board, which was chaired by Frank LaBell. During the course of the proceedings, Mr. LaBell repeatedly indicated that he was a trustee of the Local 295 Pension Funds and referred to his fiduciary obligations arising from that position. Behring concedes that there were various opportunities to object to the participation of LaBell as the arbitrator of a dispute involving those very same funds. However, Behring contends that due to the lack of any formal disclosure prior to or at the outset of the hearing, and due to the informality of the proceeding, there had been no *meaningful* opportunity to contest. In support of its position, Behring has presented the court with varying and sometimes conflicting statements. For example, in both

---

1. The authenticity of the side agreement is not challenged, and the court therefore accepts its validity.

the petition to vacate the arbitration award and in the supporting affidavit of Richard Forte, Behring states that the alleged conflict of interest "made it apparent, from the outset of the hearing that the chairman was predisposed . . . to deny the grievance." However, Roger Briton, an attorney for Behring who was instrumental in the preparation of the moving papers, testified in this court that he was present during the arbitration proceeding and that it was not until the award had been rendered that the "true extent" of the conflict became apparent. Most recently, Behring has stated that

> it was at [the presentation of the award] —and at this moment for the very first time—that Behring recognized not only that a potential conflict of interest existed, but that the conflict of interest admittedly prevented Chairman LaBell from impartially determining the dispute before him.

Post-Hearing Memorandum of Petitioner at p. 5.

Despite this final allegation, it seems clear that Behring was aware of a potential conflict of interest before the award was rendered. Since Behring failed to object to LaBell's participation at that time, the court must determine whether Behring is foreclosed from raising the issue at this juncture by virtue of the doctrine of implied waiver.

In *Garfield & Co. v. Wiest*, 432 F.2d 849 (2d Cir. 1971), the court held that where a party knows *or should reasonably* know, at the time of the agreement to arbitrate, that a potential arbitrator would probably have had business dealings with the other party to the arbitration, and does not object to having that person sit as an arbitrator, any objection to the panel is waived, notwithstanding a lack of formal disclosure during the arbitral proceedings. The losing party is thereby estopped from attacking the award and cannot have a second bite at the apple before another panel. "It is well settled that disgruntled losers cannot first raise their objections after an award has been made." *Id.* at 853.

In this case, Behring may be chargeable with knowledge of Chairman LaBell's position as trustee of the Funds. Behring entered into the Industry Agreement and agreed to contribute to the Funds more than two and one-half years prior to the submission of the dispute to arbitration. Thus, upon receipt of notice of LaBell's appointment as one of the employer-designated panel members several weeks before the arbitration proceeding, Behring could have ascertained the alleged conflict had any inquiry been made. Indeed, the existence of Mr. LaBell's dual positions may, in fact, have been recognized and deemed inconsequential.

However, Behring's knowledge need not be imputed in this case, since the court finds that actual disclosure was sufficiently made. In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) an arbitration award was vacated where one of the panel members had had a close financial relationship with a party to the arbitral proceedings. The Supreme Court held that an arbitrator has a duty to the parties to "disclose . . . any dealings that might create an impression of possible bias." *Id.* at 149, 89 S.Ct. at 339. Such disclosure was made here. Since the *Garfield* case, *supra,* held that objections are waived where formal disclosure is unnecessary because of prior knowledge, *a fortiori* objections are waived once disclosure is actually made. As the Court of Appeals for the Second Circuit stated in *Cook Industries v. C. Itoh & Co.*, 449 F.2d 106, 107–08 (2d Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972), a party

> cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.

Thus, Behring's continued participation in the arbitration proceedings without raising a challenge to LaBell's dual status as arbitrator and trustee, after LaBell had disclosed his position as trustee, must be

**518**

deemed a waiver of any objection to the award based on LaBell's partiality.

Finally, Behring contends that the doctrine of implied waiver bars later objection only as to a *potential* for bias, and that *actual* prejudice can never be waived. No authority to support that position has been cited by Behring, nor has the court found any such authority. Indeed, if the court were to accept Behring's contention, it would mean that a party to an arbitration proceeding who knows of possible bias or a potential conflict of interest on the part of one of the arbitrators could say nothing until after the award had been rendered. If the arbitration award was favorable, the party could simply let the possible conflict pass. If, on the other hand, the award was adverse, the party could claim that it did not realize that the "potential" conflict was an "actual" conflict until the award was rendered. This court will not adopt a rule which would permit that type of "wait and see" procedure.

In light of the foregoing, the petition to vacate the arbitration award is denied, and the cross-petition to confirm the award, as modified herein to apply only to employees in the New York metropolitan area, is granted.

So ordered.