**SWIFT INDEPENDENT PACKING COMPANY, Plaintiff,**

v.

**DISTRICT UNION LOCAL ONE, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, C.L.C., Defendant.**

**No. 83–CV–529.**

United States District Court,
N.D. New York.

Nov. 2, 1983.

Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Hancock & Estabrook, Syracuse, N.Y., for plaintiff; Lawrence J. Casazza, Chicago, Ill., David E. Peebles, Syracuse, N.Y., of counsel.

Belson, Connolly & Belson, New York City, Bersani & Marshall, Syracuse, N.Y., for defendant; Gene M.J. Szuflita, of counsel.

## MEMORANDUM–DECISION AND ORDER

MINER, District Judge.

### I

The present action involves a disputed labor arbitration award entered against plaintiff, Swift Independent Packing Company. Plaintiff here seeks to vacate the adverse arbitration award, 9 U.S.C. § 10,[1] while defendant, District Union Local One, has moved, pursuant to 9 U.S.C. § 9,[2] to confirm the award. Jurisdiction is predicated upon § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). Before this Court is plaintiff's motion for summary judgment, Fed.R.Civ.P. 56(a), vacating the award, as well as defendant's motion to confirm the award, 9 U.S.C. § 9, and to dismiss plaintiff's complaint, Fed.R. Civ.P. 12(b)(6).

### II

Plaintiff is a Delaware corporation with its principal place of business located in Chicago, Illinois. Defendant is a labor organization representing some of plaintiff's employees in collective bargaining negotiations with plaintiff. The arbitration award at issue here grows out of an interpretation of a collective bargaining agreement entered into between the parties.

In March of 1982, plaintiff and defendant entered into a collective bargaining agreement ("1982 agreement") covering the wages, hours and conditions of employment of certain employees located at plaintiff's Syracuse sales unit. This agreement was composed of two separate documents—a 1979 collective bargaining agreement between the parties, and a Memorandum of Understanding, which effectively amended the earlier collective bargaining agreement.

---

1. 9 U.S.C. § 10 provides:
    In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
    (a) Where the award was procured by corruption, fraud, or undue means.
    (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
    (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
    (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

2. 9 U.S.C. § 9 provides, in relevant part:
    If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title ....

Taken together, these two documents comprised the 1982 agreement.

The following provisions of the agreements all are relevant to the present dispute. Article XI, ¶ A of the 1982 agreement provides:

> The basic work week will be forty (40) hours. The basic work day will be eight (8) hours. If, in the opinion of the Company, it becomes necessary for employees to work longer than eight (8) hours in one (1) day or forty (40) hours in one (1) week, the employees shall do so to the extent permitted by the applicable New York State Laws.

Article XI, ¶ B of the 1979 collective bargaining agreement provided that:

> One and one-half (1½) times the regular rate of pay shall be paid for all hours worked in excess of forty (40) hours in any work week.

OR

> One and one-half (1½) times the regular rate of pay shall be paid for all hours worked in excess of eight (8) hours in any one (1) day.
>
> After determining separately the total compensation accruable under this Paragraph B, the greater amount only shall be paid; not both.

Article XI, ¶ B *as amended by the 1982 Memorandum of Understanding*, however, eliminated daily overtime premiums for hours worked in excess of eight. Accordingly, Article XI, ¶ B of the 1982 agreement provides as follows:

> One and one-half (1½) times the regular rate of pay shall be paid for all hours worked in excess of forty (40) hours in any work week.

Finally, Article XII of the 1982 agreement provides for a guaranteed forty hour work week:

> The Company agrees to a forty (40) hour weekly guarantee to be administered as follows.
>
> A. Except as hereinafter provided, all hourly-paid employees are guaranteed forty (40) hours pay in weeks that they report for work on the first day of the regularly scheduled payroll week and are subject to call and are available during the balance of the work week.

In April of 1982, plaintiff altered the work schedule so that certain employees would work ten hours on the first day, eight hours on the second day, six hours on the third day, and eight hours on the fourth and fifth days. On May 27, 1982, defendant filed a grievance protesting the new production schedule, contending that it violated Article XI, ¶ A of the 1982 agreement. The matter then proceeded to arbitration with a hearing held before Arbitrator Mario A. Procopio on December 3, 1982. On March 28, 1983, Arbitrator Procopio issued his opinion and award sustaining defendant's grievance and ordering plaintiff to return the affected employees to an eight hour work day. Additionally, plaintiff was directed to pay the affected employees two hours of back pay for each day on which they were scheduled to work only six hours.

Essentially, plaintiff raises four objections to the arbitrator's award. First, plaintiff claims that the arbitrator refused to hear certain relevant testimony regarding negotiation of the 1982 Memorandum of Understanding. Next, plaintiff contends that in reaching his decision, the arbitrator improperly relied on facts which were not in evidence. Third, plaintiff suggests that "the Award does not draw its essence from the Labor Agreement and is utterly lacking in rationality . . . ." (Complaint, ¶ 22(e)). Finally, plaintiff objects to the alleged partiality of the arbitrator based on the arbitrator's "longstanding family friendship with defendant's counsel, which the Arbitrator chose not to disclose until after the hearing had been adjourned." (Complaint, ¶ 22(a)).

### III

■ At the outset, it is important to note the limits of this Court's powers in reviewing an arbitration award. It is well established that a federal court may not interject itself into the merits of a controversy

which the parties contractually have agreed to submit to arbitration. As the Supreme Court has noted, "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.... The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 598–99, 80 S.Ct. 1358, 1360, 1361–62, 4 L.Ed.2d 1424 (1960) ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.") This long standing principle of limited review recently was reaffirmed by the Supreme Court.

> Under well established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one.... When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.

W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America, — U.S. —, —, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). Bearing in mind this rather narrow scope of review, the particular objections raised in plaintiff's complaint will be considered.

### A. Bias of the arbitrator

Plaintiff's most strenuous objection to the arbitration award concerns the alleged partiality of the arbitrator. Plaintiff alleges that, at the close of the December arbitration hearing, Arbitrator Procopio turned to defendant's counsel, addressed him by the familiar name "Nick" and asked if he wanted to share a ride back to the airport. After noting plaintiff's counsel's surprise at this overture, the arbitrator is alleged to have responded that he had been friends with "Nick" and his family for years, that they had sat next to each other on the plane from New York City en route to the hearing, and that they had travelled together from the airport to the hearing. Apparently surmising an appearance of impropriety, the arbitrator then sought to allay plaintiff's counsel's fears by disavowing any intention to discuss the arbitration with defendant's counsel.[3] Plaintiff now points to this alleged close personal relationship and the failure of Arbitrator Procopio properly to disclose its existence as a basis for setting aside the arbitration award.

▇▇▇ It is not disputed that partiality of an arbitrator provides sufficient grounds for vacatur of an arbitration award. Indeed, 9 U.S.C. § 10(b) expressly provides that the court may "make an order vacating the award upon the application of any

---

**3.** Defendant's version of the relationship with the arbitrator is somewhat different. While defendant's counsel acknowledges offering a ride back to the airport to Arbitrator Procopio, counsel claims that their meeting on the flight to the hearing was purely coincidental. Moreover, although counsel admits previous professional encounters with Arbitrator Procopio in the course of other arbitration matters, counsel denies any social or family relationships with the arbitrator. (Santangelo affidavit, ¶ 9).

party to the arbitration ... [w]here there was evident partiality or corruption in the arbitrators ...." The dispositive inquiry here, however, concerns whether or not plaintiff has waived its right to raise this objection by failing to interpose it until after rendition of the arbitrator's award. Defendant correctly points out that the settled law of this circuit precludes claims of bias or partiality which are not raised until after an arbitration award has been rendered. In particular, the Second Circuit has noted that a plaintiff

> cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.
>
> > "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection."

*Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir.1971) (quoting *Ilios Shipping & Trading Corp. S.A. v. American Anthracite & Bituminous Coal Corp.,* 148 F.Supp. 698, 700 (S.D.N.Y.), *aff'd,* 245 F.2d 873 (2d Cir.1957)), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *Garfield & Co. v. Wiest,* 432 F.2d 849, 853 (2d Cir.1970), *cert. denied,* 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971); *Behring International, Inc. v. Local 295 International Brotherhood of Teamsters,* 449 F.Supp. 513, 517–18 (E.D. N.Y.1978); *see also Early v. Eastern Transfer,* 699 F.2d 552, 558 (1st Cir.1983).

Plaintiff now seeks to distinguish this line of authority by arguing that the present case involves a situation where it did not become aware of any bias until *after* the close of the arbitration hearing. It is of course true that the Second Circuit waiver cases did in fact deal with situations in which the objecting party knew or should have known of the prejudicial relationships prior to or during the course of the arbitration hearing. Nonetheless, this

Court finds the waiver theory equally applicable to the instant facts. *See West Rock Lodge No. 2120, International Association of Machinists & Aerospace Workers v. Geometric Tool Co.,* 406 F.2d 284, 287 (2d Cir.1968) (failure to object to arbitrator's delay in rendering arbitration award constitutes waiver of right to object after award is made); *Graphic Arts International Union, Local 97–B v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1093 (M.D.Pa.1979) (failure to object to arbitrator's bias which was discovered *after* close of hearings, constitutes waiver of right to object at vacatur proceeding).

■ Despite the fact that the hearing itself had closed, the arbitration proceeding continued until the time of the award. Plaintiff certainly was capable of noting its objection with the arbitrator at any time after learning of the possibly prejudicial relationships. Indeed, plaintiff submitted post-hearing briefs to the arbitrator, and, despite its new-found knowledge, omitted to voice its concern over possible bias. In attempting to distinguish the pre-hearing disclosure cases, plaintiff argues that any post-hearing objection necessarily would entail a risk of alienating the arbitrator. This Court finds, however, that any such risk is no greater than that confronted by a party who wishes to raise its objection during the arbitration hearing. In short, plaintiff made a calculated decision not to object to the alleged bias of Arbitrator Procopio and now seeks to avoid the consequences of what proves to have been a tactical error. Plaintiffs "belated cry of 'bias' cannot now form a basis for setting aside the award; its silence constituted a waiver of this objection." *Graphic Arts International Union, Local 97–B v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1093 (M.D.Pa.1979).

### B. *Consideration of facts not in evidence*

As an additional ground for vacatur, plaintiff alleges that the arbitrator "fabricated evidence favorable to defendant."

Specifically, plaintiff argues that the arbitrator's conclusion that previous schedule changes similar to the ones here in dispute were effected "with the approval of both the Union and the affected employees," was unsupported by any evidence contained in the record. This Court disagrees.

■ It is well settled that an arbitration award may only be set aside if the record reveals no support whatever for the arbitrator's determinations. *Storer Broadcasting Co. v. American Federation of Television & Radio Artists*, 600 F.2d 45, 47 (6th Cir.1979). Indeed, "the law is clear that an arbitration award based upon a misinterpretation of law *or an insufficiency of supporting facts* will not be overturned." *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 300 (2d Cir. 1963) (emphasis added); *see also Refino v. Feuer Transportation, Inc.*, 480 F.Supp. 562, 565 (S.D.N.Y.1979), *aff'd mem.*, 633 F.2d 205 (2d Cir.1980). Here, the arbitrator determined that, based on the record before him, there was some evidence of mutual agreement among the parties with respect to past scheduling changes. This Court is not entitled to second-guess that determination. *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America*, — U.S. —, —, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); *John T. Brady & Co. v. Form-Eze Systems, Inc.*, 623 F.2d 261, 264 (2d Cir.), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980).

Plaintiff's charge that the arbitrator "fabricated" evidence is simply not accurate. The decision of the arbitrator was based on his reading and interpretation of the evidence which was before him. "When arbitrators explain their conclusions ... in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *See Wire Service Guild, Local 222 v. United*

*Press International, Inc.*, 623 F.2d 257, 261 (2d Cir.1980).

C. *Failure of the award to draw its essence from the labor agreement*

■ Plaintiff's third challenge to the arbitration award narrows to a claim that the award is "utterly lacking in rationality." (Complaint, ¶ 22(e)). Essentially, plaintiff disputes the conclusions of the arbitrator and would have this Court entertain renewed argument as to the merits underlying that decision. Such review is clearly impermissible. "[A] federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America*, — U.S. —, —, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). "Unless the arbitral decision does not 'dra[w]' its essence from the collective bargaining agreement,' ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." *W.R. Grace v. Local Union 759*, — U.S. at —, 103 S.Ct. at 2182 (quoting *United Steelworkers v. Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361).

■ It is abundantly clear that the present award does in fact draw its essence from the labor agreement, since the decision of the arbitrator simply is an interpretation of that agreement. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator." *United Steelworkers v. Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. This Court may not, therefore, substitute its judgment for that of the arbitrator, *see W.R. Grace v. Local Union 759*, — U.S. at —, 103 S.Ct. at 2182; *Wire Service Guild, Local 222 v. United Press International, Inc.*, 623 F.2d 257, 261 (2d Cir.1980); *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978), even if the arbitrator reached the

wrong conclusion. *See Advance Publications, Inc. v. Newspaper Guild of New York,* 616 F.2d 614, 618 (2d Cir.1980); *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 429 (2d Cir.1974); *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214 (2d Cir.1972); *Cobec Brazilian Trading & Warehousing Corp. v. Isbrandtsen,* 524 F.Supp. 7, 9 (S.D.N.Y.1980). Where, as here, there is even "barely colorable" support for the outcome reached, *Wire Service Guild, Local 222 v. United Press International, Inc.,* 623 F.2d 257, 261 (2d Cir.1980), vacatur of the arbitration award is not justified.

### D. *The arbitrator's refusal to hear certain testimony*

Plaintiff's final objection concerns an alleged refusal by the arbitrator to hear certain relevant testimony relating to negotiation of the 1982 Memorandum of Understanding. Specifically, plaintiff claims the arbitrator erred by not permitting it to introduce parol evidence on the question of the parties' intent with respect to modification of the labor agreement. After reviewing the transcript of the arbitration hearing, this Court finds that plaintiff was not denied the opportunity to introduce its proffered evidence.

While it is true that 9 U.S.C. § 10(c) provides for vacating an arbitration award "[w]here the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy ...," that section clearly is not applicable to the present facts. A fair reading of the transcript discloses beyond question that the arbitrator did not in any sense "refuse" to hear plaintiff's evidence. Indeed, the arbitrator expressly permitted the introduction of the now contested testimony for the precise purposes for which plaintiff sought to have it introduced. Specifically, plaintiff sought to elicit certain testimony of the manager of its Syracuse sales unit, Carl Skaggs, concerning his understanding of the labor agreement. Plaintiff's questioning on this subject was met by objection from defense counsel on parol evidence grounds (Transcript, pp. 81–83). Without a ruling on the objection from the arbitrator, plaintiff's counsel chose to withdraw the question. Subsequently, plaintiff posed another question to Mr. Skaggs concerning what transpired during the labor agreement negotiations. Defense counsel again objected on parol evidence grounds (Transcript, p. 86). In response to the objection, plaintiff's counsel submitted that the testimony was offered only for the purposes of rebutting previous testimony. Accordingly, the arbitrator ruled that the testimony would be admitted for that purpose (Transcript, p. 87). After additional questioning and further objections by defense counsel, plaintiff's counsel reiterated that, although he was attempting to offer parol evidence, it was offered only to rebut other testimony in the record (Transcript, pp. 88–93). A stipulation making the testimony unnecessary then was offered by defense counsel and agreed to by plaintiff. Indeed, after the arbitrator noted that the stipulation would take care of the objections, plaintiff's counsel responded "All right. Fine." (Transcript, p. 93).

There is not present in the record even a suggestion of disagreement on the part of plaintiff's counsel to the arbitrator's resolution of the evidentiary dispute. Clearly, any objection to the arbitrator's rulings on these matters has been waived by plaintiff's failure to object on the record.

Plaintiff's present objections represent a complete mischaracterization of the sequence of events at the hearing. There is not to be found, as intimated by plaintiff, any coercion on the part of the arbitrator compelling plaintiff to accept any unacceptable evidentiary rulings. Rather, what is apparent is plaintiff's wholly voluntary acquiescence in the rulings of the arbitrator. Plaintiff's present challenge to the "woefully inadequate stipulation" allegedly "imposed" by the arbitrator is simply unavailing. So too is plaintiff's claim that it was not required at the hearing to "have more contentiously asserted [its] right to present [its] evidence ...." Not only did plaintiff fail to raise objections to the arbitrator's

evidentiary rulings as they were made, but this Court can find no basis for any such objections, nor any impropriety in the arbitrator's conduct of the hearing.

### IV

On balance, it is clear to this Court that no grounds exist warranting vacatur of the arbitration award. Absent any finding of arbitral abuse, this Court is without power to entertain renewed argument over a controversy already properly resolved in the arbitral setting. Accordingly, defendant's motion to confirm the award pursuant to 9 U.S.C. § 9 is granted.[4] Plaintiff's motion for summary judgment vacating the award hereby is denied.

It is so Ordered.

---

**4.** This holding makes unnecessary consideration of defendant's motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6).