**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 27, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GENOS "D.J." WILLIAMS,

　　　　Plaintiff-Appellant,

v.

THE NATIONAL FOOTBALL
LEAGUE,

　　　　Defendant-Appellee.

No. 12-1255
(D.C. No. 1:12-CV-00650-CMA-MJW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **EBEL**, Circuit Judges.

　　　　Genos "D.J." Williams, a linebacker for the Denver Broncos, appeals from the

district court's order granting the National Football League's (NFL's) motion for

summary judgment and denying as moot his motion for a preliminary injunction.  We

have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM for substantially the same

reasons identified by the district court.

---

[*]　　　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

Pursuant to a collective bargaining agreement between the NFL Management Council and the NFL Players Association, the NFL has adopted a policy "prohibit[ing] the use of anabolic/androgenic steroids (including exogenous testosterone), stimulants, human or animal growth hormones, whether natural or synthetic, and related or similar substances." Aplt. App., Vol. I at 159. To enforce the policy, all players are tested at least once per league year. Moreover, players are randomly selected throughout the calendar year for testing. In addition to providing penalties for players who test positive, the policy also penalizes "[a]ny effort to substitute, dilute or adulterate a [urine] specimen, or to manipulate a test result to evade detection." *Id.* at 163.

On August 9, 2011, pursuant to the NFL's annual testing regimen, Mr. Williams provided a urine specimen to a certified specimen collector at the Broncos' training facility in Englewood, Colorado. Laboratory tests on the urine specimen showed "[n]o endogenous steroids," a finding "inconsistent with a physiological urinary steroid profile." *Id.* at 110. In other words, Mr. Williams's "urine specimen had been determined not to be a human specimen." Aplt. Br. at 10.

On September 7, 2011, Mr. Williams appeared before the same specimen collector and provided a urine specimen under the NFL's random testing regimen. The results of that test likewise showed "[n]o endogenous steroids," which is "inconsistent with a physiological urinary steroid profile." Aplt. App., Vol. I at 233.

Afterward, the National Center for Drug Free Sport, which oversees the NFL's urine-specimen collection programs and engages collection companies to obtain the specimens from players, interviewed the specimen collector. He admitted that "at times [he] viewed from the side as opposed to full frontal." *Id.* at 266. Because the collector failed to follow "standard protocols" in "the validation process," the Center suspended him from further collections, and his employment was terminated by the collections contractor. *Id.* Later, the collector submitted an affidavit asserting that he "directly observed Mr. Williams provide a urine sample." *Id.*, Vol. II at 486.

On November 11, 2011, the NFL announced that Mr. Williams was in violation of the NFL's steroid policy based on the test results from his August 9 urine specimen.[1] As punishment, the NFL stated that he would be "suspended for six regular-season games," "placed on reasonable cause testing for the remainder of [his] career," "required to return 6/17 of any applicable signing bonus," suspended for at least eight games upon another violation, and reinstated to play only upon the approval of the steroid policy's administrator. *Id.*, Vol. I at 66-67. Mr. Williams appealed the NFL's decision to arbitration.

Prior to the arbitration hearing, on November 16, 2011, Mr. Williams appeared before a new collector and provided a urine specimen under the NFL's Substances of Abuse program. While that specimen tested negative for controlled substances, the

[1] Mr. Williams was apparently not given a second violation based on the September 7 test results because he had not yet been notified of a first violation. *See id.*, Vol. I at 319.

- 3 -

collector reported that during the collection process Mr. Williams "turned out of frontal view and a bottle fell to the floor. . . . [Mr. Williams] immediately kicked the bottle out of the restroom towards his locker and his personal belongings." *Id.* at 238. The NFL did not discipline Mr. Williams for this incident, but instead issued a warning.

On December 13, 2011, the NFL held a hearing on Mr. Williams's appeal. The arbitrator heard testimony from a number of witnesses concerning the NFL's steroid policy and its implementation, and the collection and processing of Mr. Williams's urine specimens. Mr. Williams testified it was his position that he "did not produce the [urine] specimens on August 9 or September 7." *Id.* at 323. As to the November 16 incident, Mr. Williams maintained that the bottle was "something that [he] used for energy" before practice, and that his foot inadvertently struck it after it fell to the floor. *Id.* at 301 (internal quotation marks omitted). The hearing concluded after closing arguments.

On January 16, 2012, two days after the Broncos were eliminated from the playoffs in the postseason, counsel for Mr. Williams requested by email that the arbitrator dismiss the case because he had failed to render a decision within the timeframe contemplated by the steroid policy. *See id.* at 180 (stating that "the Hearing Officer will evaluate the evidence and render a written decision with respect to disciplinary action within five (5) calendar days"). The arbitrator declined by email on January 19, stating that he "was asked to delay a decision on this matter to

- 4 -

afford an opportunity for the parties to the governing collective bargaining

agreement, the NFL and the NFL[Players Association], to explore an agreed

resolution of this dispute." *Id.*, Vol. II at 372. The arbitrator further stated that

"[t]his action is consistent with past practice." *Id.* The parties do not dispute that the

arbitrator had communicated with the NFL's general counsel and executive

vice-president, Jeffrey Pash.

On February 6, the arbitrator rendered a decision denying Mr. Williams's

appeal. In reaching that result, he interpreted the steroid policy as placing "the

burden . . . on the [NFL] to establish that any departure from its stated protocols did

not materially affect the validity of the violation." *Id.* at 376. The arbitrator found it

"clear that Williams was involved in three separate incidents of attempted

substitution of a specimen." *Id.* at 379. As for the August 9 urine specimen in

particular, the arbitrator concluded that the integrity of the results was not in serious

doubt:

> There is no break in the chain of custody which would materially affect
> the validity of the laboratory test. . . .
>   . . . .
>   . . . Only one person has been shown to have a motive to
> substitute the specimen; Williams[ ] is the only one with a lot at stake
> here, so I am persuaded of his culpability.
>   There is no direct evidence in this record about how the bogus
> urine was submitted as Mr. Williams'[s] specimen, but the
> circumstantial evidence compels the conclusion that the substitution
> occurred either with [the August 9 collector's] knowledge or through his
> failure to comply with requirements of the collection protocols. That is
> troubling, and it is suggested that the NFL and NFL[Players
> Association] take steps to address what appears to be, at least in some
> places, an environment of haste, rushing, confusion and short cuts

around the collection process.  However, in this case, to the extent that variations from established procedures or protocol occurred, I find that they did not materially affect the validity of the violation.

*Id.* at 380-81.

Mr. Williams filed suit in state court, seeking to vacate the arbitrator's decision.  The NFL removed the case to federal court, where Mr. Williams moved for a preliminary injunction, sought discovery concerning the arbitrator's communication with Mr. Pash, and asked the court to "stay any motions for summary judgment" pending discovery.  Doc. #42 at 8.  The NFL moved for summary judgment and opposed Mr. Williams's motions.  A magistrate judge denied the requested discovery and declined to stay any summary-judgment motions, stating that Mr. Williams had not demonstrated prejudice from the delayed arbitrator's decision, and that the communication was collateral to the arbitration award because there was no evidence that "Mr. Pash somehow influenced [the arbitrator's] ultimate decision."  Aplt. App., Vol. II at 575.

Mr. Williams then filed a brief that opposed summary judgment and alternatively asked the district court to defer a summary-judgment ruling  pending discovery.  He subsequently filed objections to the magistrate judge's order.  The district court overruled Mr. Williams's objections and affirmed the magistrate's decision.

Finally, the district court granted the NFL's summary-judgment motion and enforced the arbitration award.  In doing so, the court noted that the narrow standard

of judicial review applicable to labor-arbitration awards limited its analysis to whether the arbitrator "'even arguably constru[ed] or appl[ied] the contract and act[ed] within the scope of his authority.'" *Id*. at 634 (quoting *San Juan Coal Co. v. Int'l Union of Operating Eng'rs*, 672 F.3d 1198, 1201 (10th Cir. 2012). Upon determining that Mr. Williams's challenge to the arbitration award failed on the merits, the district court denied as moot his request for injunctive relief.

## DISCUSSION

"We review a grant of summary judgment in a labor arbitration case de novo." *San Juan Coal Co.*, 672 F.3d at 1200-01. We reiterate, however, that a court's role in these types of arbitration cases is simply to determine whether the arbitrator strayed from the collective-bargaining agreement and "effectively dispense[d] his own brand of industrial justice." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (internal quotation marks omitted). We conclude, for substantially the same reasons announced in the district court's thorough and well-reasoned order granting summary judgment, that Mr. Williams has failed to show such a wholesale abandonment of the collective-bargaining agreement.

We add the following, however, in regard to Mr. Williams's claim that the district court should have deferred summary judgment and allowed him discovery as to "the details of the *ex parte* communications" between Mr. Pash and the arbitrator.[2]

---

[2] We assume for the sake of discussion that the communication between Mr. Pash and the arbitrator constitutes an "*ex parte*" discussion. This case does not,

(continued)

Aplt. Opening Br. at 42.  Although the district court did not discuss Mr. Williams's

request for a Fed. R. Civ. P. 56(d) deferral when it granted summary judgment, it had

already determined that he was not entitled to the discovery because it went to a

collateral issue in the arbitration.  But we need not reach that determination because

there is nothing in the record showing that Mr. Williams complained to the arbitrator

after learning on January 19, 2012, of the *ex parte* communication.  Indeed, in the

eighteen days between the revelation of the communication and the release of the

arbitrator's decision, Mr. Williams apparently lodged no objection.  "It is well settled

that disgruntled losers cannot first raise their objections after an award has been

made."  *Garfield & Co. v. Wiest*, 432 F.2d 849, 853 (2d Cir. 1970).  A party "cannot

remain silent, raising no objection during the course of the arbitration proceeding,

and when an award adverse to him has been handed down complain of a situation of

which he had knowledge from the first."  *Cook Indus., Inc. v. C. Itoh & Co. (Am.)

Inc.*, 449 F.2d 106, 107–08 (2d Cir. 1971); *see Williams v. Nat'l Football League*,

582 F.3d 863, 885-86 (8th Cir. 2009) (failure to object to arbitrator's partiality "prior

to th[e] lawsuit" waived issue); *Kodiak Oil Field Haulers, Inc. v. Teamsters Union

Local No. 959*, 611 F.2d 1286, 1290 (9th Cir. 1980) (failure to object to arbitrator's

partiality "at the time the Board of Arbitration was convened" waived issue); *Swift*

---

however, present a typical independent, third-party arbitrator situation.  Indeed, the
steroid policy designates the NFL's Commissioner or his designee as the arbitrator,
Aplt. App., Vol. I at 169, and Mr. Pash is the NFL's general counsel/executive
vice-president.  Consequently, a communication such as the one that occurred here is
not unlikely or unforeseeable given the steroid policy's arbitrator-selection provision.

*Indep. Packing Co. v. Dist. Union Local One, United Food & Commercial Workers Int'l Union, AFL–CIO*, 575 F. Supp. 912, 916 (N.D. N.Y. 1983) (applying waiver rule where party did not become aware of any bias until after the close of the arbitration hearing, reasoning that "[d]espite the fact that the hearing itself had closed, the arbitration proceeding continued until the time of the award").  Had Mr. Williams objected to the arbitrator's ex parte communication contemporaneously upon learning of it, the arbitrator could have addressed it, potentially obviating the need for judicial review.

We conclude that Mr. Williams waived any objection to the arbitrator's ex parte communication.  Therefore, Mr. Williams's request to defer summary judgment to explore that waived issue lacked merit.

CONCLUSION

The judgment of the district court is AFFIRMED for substantially the same reasons given by the district court in its June 21, 2012 order granting summary judgment.

Entered for the Court
Per Curiam