**REN ELECTRONICS CORPORATION, Plaintiff,**

v.

**LOCAL 208, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Defendant.**

Civ. A. No. 85–0253–F.

United States District Court,
D. Massachusetts.

July 30, 1987.

James M. Trono, Skoler, Abbott & Hayes, P.C., Springfield, Mass., for plaintiff.

James O. Hall, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

This is an action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in which plaintiff seeks to vacate the decision of an arbitrator reducing the discharges of two of its employees to suspensions.

The parties filed cross motions for summary judgment and defendant filed a motion to dismiss for insufficiency of service of process, all of which were referred to a magistrate for a report and recommendation. Rule 3 of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts; 28 U.S.C. § 636(b)(1)(B). On August 7, 1986 the Magistrate recommended that plaintiff's motion for summary judgment be allowed, and that defendant's motion for summary judgment and motion to dismiss be denied.

On January 13, 1987 the Court issued a Memorandum and Order rejecting the recommendation of the Magistrate as to the insufficiency of service of process and ordering that the action be dismissed without prejudice. A judgment issued the same day. At that time, the Court did not consider the Magistrate's recommendation as to the motions for summary judgment. On January 30, 1987 the Court reconsidered its January 13 decision, and granted plaintiff relief from judgment.

The summary judgment motions are now ripe for consideration. The sole issue in the case is whether the grievances filed on behalf of the two terminated employees were arbitrable. The Magistrate found that because the union failed to perform a required procedural step—reducing the grievance to writing within twenty-four hours—the arbitrator's decision to reduce the discharge should be vacated.

## I. FACTS

The undisputed facts are as follows:[1]

Plaintiff Ren Electronics ("Employer") is a South Hadley company engaged in the manufacture of cable harnesses for the computer industry. Defendant Local 208 ("Union") is the exclusive bargaining representative for all production and maintenance employees at Ren Electronics. Orlando Santos and Jeffrey Luna were both hired by the plaintiff in January 1984. At approximately 6:10 a.m. on December 15, a supervisor, Judy Norwood, was making the rounds of plaintiff's plant and observed Santos, Luna and other employees engaged in allegedly lewd behavior. At 7:50 a.m. the employees were called into the office of production manager Gerald LeClair. Two employees were sent back to work; after a review of the incident by supervisory personnel, Luna and Santos were discharged. At first Dorothy Gosselin, the Union president, indicated her approval of the two discharges just before the 7:50 a.m. meeting; but shortly before 11:00 a.m., she requested another meeting with management. At this second meeting, held at 11:00 a.m., the company refused to change its decision as to the discharges.

Gosselin again spoke to LeClair on December 20 or 21 in an effort to have the company change the discharges to disciplinary suspensions. LeClair said that he would try to have a lesser penalty imposed, but he could not guarantee success. On December 24 or 26, LeClair restated that the company would not mitigate the discharges. On January 3, 1985 Gosselin again unsuccessfully raised the issue of reinstatement.

On January 17, 1985, Gosselin executed a written grievance on behalf of Luna and Santos. The form bore a preprinted statement: "Date verbally presented to immediate Supervisor for resolution _____"; with "1/11/85" entered on this line. Plaintiff denied the grievance as "not timely presented" pursuant to Article XVIII, paragraph 3, of the collective bargaining agreement ("Agreement"). The grievance was again denied at a subsequent meeting. Further attempts to resolve the matter proving unsuccessful, arbitration was pursued.

---

1. These facts are drawn from the background section of the Arbitrator's decision.

The Agreement contains the following provisions governing the procedures for grievances and arbitration:

### ARTICLE XVII–GRIEVANCE

All differences, disputes or any grievance which an employee may have shall be settled in the following manner:

Step 1: Between the employee involved, the employee's foreman and the immediate Union Steward. ... At the termination of these discussions or upon the request of either party, the foreman or the Union, as the case may be, shall within twenty-four (24) hours notify the requesting party of his decision. If no satisfactory settlement is reached at this step, the grievance shall be reduced to writing within twenty-four (24) hours after the foreman's decision.

Step 2: The written grievance shall be taken up by the employee's immediate Steward, the Shop Committee, and the Personnel Manager and the foreman involved within three (3) working days after the written grievance. If no satisfactory settlement is reached at this step, the grievance shall be referred within two (2) working days to Step 3.

Step 3: The grievance will be taken up within five (5) working days after receipt of the decision at Step 2 above by not more than four (4) members of the Shop Committee, the international Representative of the Union, and the Representative of Management.

### ARTICLE XVIII–ARBITRATION

1. If no satisfactory settlement is reached at the third step of Article XVII only the Union may submit a grievance to Arbitration by notification to the Company of the intent to do so within ten (10) working days after receiving the decision at Step 3, Article XVII.

2. ... The arbitrator shall be bound by the provision of this Agreement, and shall have no authority to add to, subtract from or modify any provisions of this Agreement, his authority being limited to the questions submitted....

3. Any grievance arising out of discharge or disciplinary action against an employee must be taken up within (3) working days after notification to the Union of the occurrence.

The first issue before the Arbitrator was whether the grievance was arbitrable. The Arbitrator concurred with the Employer that

when it can be clearly and convincingly shown the parties' agreement expressly contains clear and unambiguous language requiring strict adherence to explicit time limits with specific provisions with reference to consequences if time constraints are not complied with *and substantial evidence that the parties have consistently adhered to these terms and conditions of their agreement*, arbitrators may not and generally do not permit the time limits to be exceeded.

Arbitrator's Decision at 11 (emphasis in original). The Arbitrator agreed that Article XVIII contained such mandatory provisions. *Id.* at 12. However, the Arbitrator rejected the Employer's contention that the grievance had to be filed within three working days, finding that Gosselin's request for another meeting at 11:00 a.m. on December 15, 1984, the same day the discharges occurred, "was appropriate compliance with this contractual provision." *Id.*

### II. DISCUSSION

In its motion for summary judgment, the Employer concedes the Arbitrator's decision that the grievance was "taken up" in a timely fashion pursuant to Article XVIII, Paragraph 3 of the Agreement was "within the broad discretion afforded him." Plaintiff's Memorandum in Support of Summary Judgment at 4. Nevertheless, plaintiff argues that the requirement contained in Article XVII, Step 1—that the agreement be reduced to writing within twenty-four hours, was not followed. According to plaintiff, the Arbitrator "failed to even address this fatal procedural flaw." *Id.*

■ The Magistrate concluded that the Arbitrator's inexplicable oversight in discussing the Article XVII issue was fatal.

In the Magistrate's view, the matter was clearly not arbitrable because "it is simply undeniable that the grievance was not reduced to writing within twenty-four hours of the foreman's decision here." Report and Recommendation at 7. The Union objects to this conclusion, arguing that the Article XVII issue was not presented to the Arbitrator and that in any case, it is not altogether clear that the alleged violation of Article XVII's procedure barred arbitration.

In this Circuit, as elsewhere, decisions of labor arbitrators are accorded very great deference. It is well settled that "where parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievance, the arbitration award is normally non-reviewable by a court." *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1048 (1st Cir.1977). A decision of an arbitrator may not be set aside unless the court is satisfied that it is "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Id.* at 1050. This is not to state, however, that the results of arbitration may never be set aside. An arbitration decision must "draw its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Though an arbitrator is empowered to construe ambiguous contract language, "he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil v. International Association of Machinists*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).

The great deference customarily accorded the results of arbitration is a result of judicial and legislative preference for arbitration rather than litigation as a means for resolving labor disputes.[2] Thus, despite the settled rule that an arbitrator may not ordinarily disregard a party's failure to follow a clearly prescribed grievance procedure, unless the adverse party raises this failure before the arbitrator, the issue will be deemed to have been waived. *See United Steelworkers v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir.1981); *Cook Industries, Inc. v. C. Itoh & Co.*, 449 F.2d 106, 106–08 (2d Cir.1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *International Brotherhood of Electrical Workers v. Coral Electric Corp.*, 576 F.Supp. 1128, 1134–36 (S.D.Fla. 1983) (collecting cases).

The question before the Court is whether a waiver took place in this case. The Union maintains that its alleged failure to comply with Article XVII's requirement, that the grievance be reduced to writing within twenty-four hours, was never raised during the course of arbitration except in two terse sentences added to a lengthy footnote in the Employer's brief. In short, the Union claims that the Employer waived this issue by failing to present it to the Arbitrator in a meaningful way. The Magistrate dismissed this argument stating, "[t]his suggestion is an insult to arbitration. Arbitrators read footnotes. The company's position was obvious and forcefully presented." Report and Recommendation at 7.

With due respect to the Magistrate, the Court cannot agree that this issue—whether the Union failed to reduce the grievance to writing within twenty-four hours—was forcefully presented to the Arbitrator. When the written grievance was finally reduced to writing and presented to the Employer on January 17, 1983, it was denied, not for failure to have reduced it to writing within twenty-four hours, but for failure to "take up" the discharge within three working days as required by Article XVIII.[3] The record in this case is clear

---

**2.** "Compared with litigation, arbitration is more expedient and less expensive. The agreement that the arbitrator's award be final and binding cuts off further uncertainty as to the rule of the shop and allows greater efficiency and better planning through a peaceful resolution of labor disputes." *S.D. Warren Co. v. United Paper-*

*worker's International Union,* 815 F.2d 178, 183 (1st Cir.1987).

**3.** The grievance bears this notation: "Not timely presented see Article XVIII, page 3." Arbitrator's Decision at 7.

that the alleged failure to conform to Article XVII was never raised at any time during the course of the in-house grievance procedure or during the arbitration hearing. The *only* reference to it in the record is in a footnote in plaintiff's post-arbitration hearing brief which devoted a total of six pages to the issue of arbitrability. It is clear that the Arbitrator failed to address this claim because it was never advanced by the Employer except in the most oblique fashion. It is, therefore, understandable that the Arbitrator's decision refers in the singular to the Article XVIII, paragraph 3 provision of the Agreement as the *"provision relied upon by the Company in denying the grievance...."* Arbitrator's Decision at 12 (emphasis in original).

The Court in *C. Itoh, supra,* held that a party "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain" about procedural errors. 449 F.2d at 107–08. This Court finds that the plaintiff remained virtually silent during the course of the arbitration, waiting until this litigation to present its position that Article XVIII was not followed.

By pursuing this course, plaintiff has deprived defendant of the possibility of presenting evidence of special circumstances why the Article XVII provision should not be considered as mandatory. There is some indication from the Arbitrator's Decision that had he not been able to conclude that the matter was "taken up" within the three-days, he might have been persuaded, given the parties' "apparent excellent" past history, that this requirement was not mandatory.[4]

The Magistrate dismissed this possibility stating, "evidence regarding past history was never submitted in the arbitration proceeding and no findings on this point, other than the statement of general impression, qualified significantly by the word 'apparent,' are contained in the arbitrator's mem-

orandum." Report and Recommendation at 8 n. 2. But defendant was never given the opportunity to present evidence on this point because it was not put on notice of even the possibility that plaintiff was relying on Article XVII until it received plaintiff's *post*-arbitration hearing brief.

From this, the Court concludes that plaintiff has effectively waived the issue of Article XVII timeliness.

### III. CONCLUSION

■ The Court finds that the Arbitrator's decision that the matter was procedurally arbitrable was not "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." Accordingly, the Court declines to adopt the recommendation of the Magistrate, DENIES plaintiff's motion for summary judgment, ALLOWS defendant's motion for summary judgment and CONFIRMS the decision of the Arbitrator.

It is So Ordered.

---

4. "Having so found, the Arbitrator need not address the fact that the Parties' apparent excellent relationship ... has enabled them, to their credit, to consistently resolve disputes expeditiously by cooperation and informal communi-

cation ... in a manner that does not comport with the strict time limits and procedures *mandated* (*shall*) in the Steps of their Agreement's Grievance and Arbitration Articles." Arbitrator Decision at 12 (emphasis in original).